COMMONWEALTH vs. MARK SULLIVAN.

No. 10-P-1869.

Plymouth. February 1, 2012. - July 30, 2012.

Present: GRASSO, KAFKER, & MILKEY, JJ.

*Obscenity,* Child pornography. *Practice, Criminal,* Indictment, Grand jury
proceedings, Instructions to jury. *Grand Jury. Constitutional Law,* Freedom
of speech and press, Obscenity. *Evidence,* Photograph, Obscenity. *Words,*
"Lewd exhibition."

In proceedings arising from an indictment charging the defendant with posses-
sion of child pornography in violation of G. L. c. 272, § 29C(vii), and
possession of child pornography as a subsequent offense, the judge did not
err in denying the defendant's motion to dismiss the indictment for failing
to state a crime, where, although very poorly drafted, the three-page indict-
ment, when read as a whole, including the captions and the subsequent of-
fense portions, provided the defendant with sufficient information to know
both the nature of the accusation against him and the law that he was ac-
cused of violating, if not the particular theory with which he was being
charged. [295-298] MILKEY, J., dissenting.

A Superior Court judge properly denied a criminal defendant's motion to
dismiss the indictment against him on the ground that the Commonwealth
presented unnecessary and prejudicial bad acts evidence to the grand jury
and thus impaired the integrity of the proceedings before them, where the
evidence was relevant to the Commonwealth's proof of the crime and was
neither false nor deceptive. [298-299]

This court, undertaking an independent review of the photographic evidence
presented at the trial of an indictment charging possession of child
pornography in violation of G. L. c. 272, § 29C(vii), and possession of
child pornography as a subsequent offense, concluded that the evidence
was sufficient to demonstrate that the photograph of a naked adolescent
girl that the defendant had printed from a computer at a public library
contained a "lewd exhibition" of the girl's pubic area or breasts, as required
by that statute. [299-308] MILKEY, J., dissenting.

At the trial of an indictment charging possession of child pornography in viola-
tion of G. L. c. 272, § 29C(vii), and possession of child pornography as a
subsequent offense, the judge's instructions to the jury regarding the mean-
ing of the term "lewd exhibition," as used in that statute, correctly sum-
marized the law, and the judge did not err in declining to give the defend-
ant's requested jury instruction that mere nudity was not enough to constitute
lewd exhibition; further, error, if any, in the judge's failure to state more
clearly that the defendant's subjective reaction to the photography was not

relevant to the jury's determination of lewdness did not create a substantial risk of a miscarriage of justice, where the judge properly recited the law and relevant factors, which adequately instructed the jury on the lewdness inquiry, and where both the Commonwealth and the defense focused the jury's attention to the four corners of the photograph in measuring lewdness. [308-309] MILKEY, J., dissenting.

At the trial of an indictment charging possession of child pornography in violation of G. L. c. 272, § 29C(vii), and possession of child pornography as a subsequent offense, arising from the defendant's possession of a photograph of a naked girl that he had printed from a computer at a public library, the judge did not commit an abuse of discretion in admitting in evidence, over the defendant's objection, a number of other photographs of children that the defendant had viewed on the same occasion, where the additional photographs were relevant to contested issues (i.e., whether the defendant knowingly possessed the photograph that was the subject of the indictment, and whether the child in that photograph was under the age of eighteen), and where the judge provided a limiting instruction to the jury on their use of the evidence. [309-310]

INDICTMENT found and returned in the Superior Court Department on June 1, 2007.

The case was tried before *Wendie I. Gershengorn*, J.

*Carlo A. Obligato*, Committee for Public Counsel Services, for the defendant.

*Gail M. McKenna*, Assistant District Attorney, for the Commonwealth.

KAFKER, J. The defendant, Mark Sullivan, was convicted of one count of possession of child pornography, G. L. c. 272, § 29C(vii), and possession of child pornography as a subsequent offense, G. L. c. 272, § 29C.[1] He argues on appeal that the photograph of a naked adolescent girl that he printed from a computer at the Hingham public library (library) did not contain a lewd exhibition of the pubic area of the girl or of her breasts as required by G. L. c. 272, § 29C(vii). He contends that the jury instructions on lewd exhibition were incomplete, and that prejudicial, irrelevant evidence regarding other pictures he was viewing in the library was admitted. He also claims that defects in the indictment and *O'Dell* violations in the grand jury process required dismissal of the indictment. See *Commonwealth* v. *O'Dell*, 392 Mass. 445, 446-447 (1984). We affirm.

---

[1]This was a retrial of the defendant. A previous trial on these charges had resulted in a hung jury.

*Background.* A librarian, checking on a computer in an isolated alcove of the library, found the defendant printing out a photograph of a naked girl on a beach.[2] The librarian told the defendant this was not what the computers were to be used for, and he tried to take the photograph away from the defendant. The defendant ripped the photograph away, leaving the librarian with only a small piece of it. As another picture started to print, the librarian turned the printer off and told the defendant that he could lose his library privileges. The librarian then contacted his supervisor, who came to speak to the defendant. The defendant informed the supervisor that the "images were heavily censored," to which the supervisor responded that it was irrelevant. The defendant then stated, "I couldn't help it. It was a pop-up." The librarian then inquired, if that were so, why it printed. The defendant had no response. When asked his name, the defendant said, "Smith."

After the library closed, the librarian reviewed the computer's Web site history and found the photograph the defendant had printed, as well as others of children on beaches and in other settings, with and without clothes. He determined the printed photograph came from a Russian-based Web site called "Photofile.RU."

The grand jury were informed that the librarian also saw that the defendant had reviewed sex offender sites and that one of the names that the defendant had checked on the site was Mark Sullivan. The librarian "ran" a search for that name and found it to be the name of a level three sex offender from Norwell. The librarian retrieved a photograph of Mark Sullivan on the sex offender registry Web site and identified it as a photograph of the library patron who had printed out the photograph the librarian had seen. The librarian contacted the police.

*The indictment.* The defendant claims that the trial judge erred in not dismissing the indictment for failing to state a crime. Although very poorly drafted, the three-page indictment, when read as a whole, was sufficient.

An indictment will not be dismissed "if the offense is charged with sufficient clarity to show a violation of law and to permit

---

[2] The computer had a dedicated printer next to it.

the defendant to know the nature of the accusation against him. It is not necessary for the Commonwealth to set forth in the . . . indictment every element of the crime to withstand a motion to dismiss." *Commonwealth* v. *Fernandes*, 430 Mass. 517, 520 (1999), cert. denied sub nom. *Martinez* v. *Massachusetts*, 530 U.S. 1281 (2000) (citations omitted). See *Commonwealth* v. *Roby*, 462 Mass. 398, 402-405 (2012). Rather, it is acceptable for the indictment to contain "an appropriate legal term descriptive" of the criminal act. *Commonwealth* v. *Green*, 399 Mass. 565, 566 (1987), quoting from Mass.R.Crim.P. 4(a), 378 Mass. 849 (1979). Thus in *Green*, it was held sufficient to allege that the defendant "[d]id indecently assault and beat" the victim without specifying each element of the offense. *Id.* at 566-567.

The indictment here began with the following caption: "INDICTMENT[,] PURCHASE OR POSSESSION OF VISUAL MATERIAL OF CHILD DEPICTED IN SEXUAL CONDUCT[,] GENERAL LAWS CHAPTER 272, SECTION 29C[,] COUNT A." Count A then provided that Mark Sullivan on or about February 14, 2007, in Hingham "did knowingly . . . possess a . . . photograph . . . of any child whom the person knows or reasonably should know to be under the age of eighteen years. See Count B."

The indictment then continued with the caption to Count B, which provided: "PURCHASE OR POSSESSION OF VISUAL MATERIAL OF CHILD DEPICTED IN SEXUAL CONDUCT, SUBSEQUENT OFFENSE[,] GENERAL LAWS CHAPTER 272, SECTION 29C." The language from Count A was then repeated, followed by the clause, "after having been previously convicted in." His ten previous convictions of possession of child pornography or posing or exhibiting children in a state of nudity were then listed.

The defendant argues that the indictment failed to charge him with a crime because he was accused only of knowing possession of a photograph of a child under eighteen. No crime was charged, he contends, because the indictment omitted the substance of subsection (vii) of c. 272, § 29C, inserted by St. 1997, c. 181, § 2, which provides that the child in the photograph the defendant possessed "be depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed

genitals, pubic area, buttocks or, if such person is female, a fully or partially developed breast of the child."

We conclude that the entire indictment, which includes the captions and the subsequent offense portions of the indictment, provided the defendant with sufficient information to know both the nature of the accusation against him and the law that he was accused of violating. The indictment references the date and place of the offense. It also states that the defendant is being prosecuted for possession of a photograph of a child arising out of these events. The caption references the chapter and section of the statutory violation and further describes the conduct proscribed: visual material of a child depicted in sexual conduct.

Reliance on the caption is not improper. "The caption on an indictment has been used in aid of interpreting the text of an indictment." *Commonwealth* v. *Fernandes*, 46 Mass. App. Ct. 455, 459 (1999), *S.C.*, 430 Mass. 517 (1999), cert. denied sub nom. *Martinez* v. *Massachusetts*, 530 U.S. 1281 (2000). So long as they are not inconsistent with each other, the caption may be used to "illuminate[]" the meaning of the body of the indictment. *Ibid.* Compare *Commonwealth* v. *Williams*, 73 Mass. App. Ct. 833 (2009) (may not use caption to justify amendment of complaint after trial to include new form of vehicular homicide with additional elements and more severe maximum sentence). Here the body of the indictment is incomplete without the caption, but it is not inconsistent with the caption.

The subsequent offense portion of the indictment also informs the defendant of the nature of the accusation and the statutory violation. "[T]he counts for the current offense and for the repeat offense are viewed as parts of one indictment and charge only one crime with a sentence enhancement provision." *Commonwealth* v. *Fernandes*, 430 Mass. at 520-521. The defendant's numerous prior convictions of possession of child pornography are listed in the indictment. The indictment informs the defendant that the new crime he is being charged with involving child pornography is a repeat offense, of which he is undoubtedly aware. "Here, a reader of count B of the indictment would require practiced obtuseness not to understand the nature of the offense charged." *Id.* at 523, quoting from *Commonwealth* v. *Fernandes*, 46 Mass. App. Ct. at 459.

The indictment need not contain reference to the particular subsection or theory of culpability with which the defendant is being charged. Cf. *Commonwealth* v. *DePace*, 442 Mass. 739, 743 (2004), cert. denied, 544 U.S. 980 (2005) ("The statutory form of an indictment alleging murder that is not self-limiting to murder in the second degree encompasses all theories of murder in the first degree and is sufficient to charge murder by whatever means it may have been committed"); *Commonwealth* v. *Morales*, 453 Mass. 40, 52 (2009). Just as the Commonwealth is not required to "present to the grand jury evidence of each theory under which the defendant may be found guilty at trial," *Commonwealth* v. *Clayton (No. 1)*, 63 Mass. App. Ct. 608, 612 (2005), it need not reference the particular theory upon which it is proceeding in the indictment.[3]

In sum, after reading the indictment in its entirety, the defendant was well informed of which statute he was accused of violating and why. This was sufficient to justify the judge's decision to deny the motion to dismiss the indictment.

*Integrity of the grand jury process.* The defendant contends that by presenting unnecessary and prejudicial "bad acts" evidence to the grand jury, the Commonwealth "impaired the integrity of the grand jury proceedings," necessitating dismissal of the indictment obtained thereby. *Commonwealth* v. *Rice*, 441 Mass. 291, 309 (2004). See *Commonwealth* v. *O'Dell*, 392 Mass. at 446-447.

"It is the general rule that a court should not inquire into the adequacy or competency of the evidence upon which an indictment is based." *Commonwealth* v. *Salman*, 387 Mass. 160, 166 (1982). "However, when it appears that the integrity of the grand jury process has been impaired, a defendant may attack the validity of the indictment by way of a motion to dismiss." *Ibid.* In order to prevail on such a motion, the defendant must prove that "(1) the Commonwealth knowingly or recklessly presented false or deceptive evidence to the grand jury; (2) the evidence was presented for the purpose of obtaining an indict-

---

[3]Finally, although a bill of particulars cannot save a defective indictment, we note that the defendant requested and received a bill of particulars here. The bill of particulars included the statutory language set out in G. L. c. 272, § 29C(vii).

ment; and (3) the evidence probably influenced the grand jury's decision to indict." *Commonwealth* v. *Silva*, 455 Mass. 503, 509 (2009).

The evidence to which the defendant takes exception is the material uncovered by the librarian after the defendant was found printing out the photograph of the naked girl on the beach. After the defendant left the library, the librarian reviewed the Web sites that the defendant had been viewing, which included the sex offender registry and sex offender Web sites, where the defendant had been examining his own listing. The librarian found the defendant's listing as a level three sex offender and his photograph, from which the librarian identified the defendant. Prior statements to library personnel by other library patrons concerning their suspicions regarding the defendant's use of the library's computer to view pornography on other occasions further confirmed his identity. Submitting this evidence to the grand jury to establish the defendant's identity was neither false nor improper, especially where the defendant concealed his identity at the library by giving a false name, and was not apprehended at the scene.

The Commonwealth also was required to establish the defendant's knowing possession of the photograph. When confronted by the librarian with the photograph printing out, the defendant had claimed it was a "pop-up," that is, that he did not deliberately go to the Web site, choose the photograph, and print it. His Internet searches that day, including the other Web sites that he was visiting and the photographs he was viewing, were relevant to his knowing possession of the photograph at issue, as were his prior similar activities at the library.

As the evidence was relevant to the Commonwealth's proof of the crime and neither false nor deceptive, the motion judge properly found that there was no *O'Dell* violation.

*Lewd exhibition.* General Laws c. 272, § 29C, provides:

> "Whoever knowingly purchases or possesses a negative, slide, book, magazine, film, videotape, photograph or other similar visual reproduction, or depiction by computer, of any child whom the person knows or reasonably should know to be under the age of 18 years of age and such

> child is . . . (vii) depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed genitals, pubic area, buttocks or, if such person is female, a fully or partially developed breast of the child; with knowledge of the nature or content thereof shall be punished by imprisonment in the state prison for not more than five years . . . ."

The statutory purpose underlying the prohibition of knowing possession of child pornography is set forth in § 1 of St. 1997, c. 181:

> "The general court hereby finds: (1) that the sexual exploitation of children constitutes a wrongful invasion of a child's right to privacy and results in social, developmental and emotional injury to such child and that to protect children from sexual exploitation it is necessary to prohibit the production of material which involves or is derived from such exploitation and to exclude all such material from the channels of trade and commerce; (2) that the mere possession or control of any sexually exploitative material results in continuing victimization of children as such material is a permanent record of an act or acts of sexual abuse or exploitation of a child and that each time such material is viewed the child is harmed; (3) that such material is used to break the will and resistance of other children so as to encourage them to participate in similar acts; (4) that laws banning the production and distribution of such material are insufficient to halt this abuse and exploitation; (5) that to stop the sexual abuse and exploitation of children, it is necessary to ban the possession of any sexually exploitative materials; and (6) that the commonwealth has a compelling interest in outlawing the possession of any materials which sexually exploit children in order to protect the privacy, health and emotional welfare of children and society as a whole."

The photograph in the instant case is of a naked adolescent girl sitting on her knees on a beach with her legs separated, but not spread, and her pubic area partially visible. The focal point of the photograph is her developing breasts and, to a lesser extent, her pubic area. Her developing left breast and nipple are

prominently displayed. The tilt of her head, the shadow line it creates, the angle of her glasses and ponytail, and her right arm align with her right nipple, drawing the viewer's attention to it. Her left hand is pointed down and over, but not touching, her pubic area, placing half of her pubic area in shadow. Her hand position draws the viewer's attention to her pubic area. The girl is staring downward. She is not smiling, nor is she otherwise engaging with the photographer. Someone who knows the girl would be readily able to identify her from the photograph. She does not appear to be posed.[4]

All but one of the statutory requirements are undisputedly satisfied here. The defendant does not challenge that the picture of the girl was a photograph or visual depiction by computer, that he knowingly possessed the photograph, that he was knowledgeable of the content of the photograph, and that he knew or reasonably should have known that the girl depicted in the photograph was under eighteen years of age. He also does not dispute that this was a subsequent offense. The only issue is whether the photograph is lewd.

Much has been written on what it means for an image to be lewd. In *New York* v. *Ferber*, 458 U.S. 747, 764 (1982), the United States Supreme Court, in interpreting a statute that prohibited the "lewd exhibition of the genitals" of a child under sixteen years of age, explained that such a statute would not violate the First Amendment to the United States Constitution, even if the exhibition did not "appeal[] to the prurient interest of the average person" or was not "patently offensive." The State was free to criminalize exhibitions of children that were lewd but not obscene. *Id.* at 753. See *Commonwealth* v. *Kenney*, 449 Mass. 840, 848 (2007).

The United States Supreme Court and the Supreme Judicial Court have carefully explained their reasons for this special standard of solicitude for children in the context of First Amend-

---

[4]A second photograph of her, which was also in the Web site history viewed by the defendant but was not the basis of the prosecution, shows the girl with a naked toddler walking into the picture frame. In this photograph, the girl's head is still pointing downward but her left arm is across and covering her left breast and her fingers are partially covering her right nipple. Her pubic area is more exposed, as this is a more frontal picture of her, and her right hand is close to, but not covering, her pubic area.

ment challenges to child pornography prosecutions. "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *New York* v. *Ferber, supra* at 757. This "interest in 'safeguarding the physical and psychological well-being of a minor' is 'compelling.' " *Commonwealth* v. *Kenney, supra* at 848, quoting from *New York* v. *Ferber, supra* at 756-757. Moreover, "[i]n cases involving child pornography, . . . 'the evil to be restricted so overwhelmingly outweighs the expressive interests, if any, at stake,' that States may constitutionally proscribe the production" or possession of a lewd photograph of children, "whether or not it depicts works of value." *Ibid.*, quoting from *New York* v. *Ferber, supra* at 761, 763-764.

Even with this heightened standard of protection of children, nudity alone is not enough to render a photograph lewd. See *Osborne* v. *Ohio*, 495 U.S. 103, 112 (1990); *United States* v. *Amirault*, 173 F.3d 28, 33 (1st Cir. 1999) (*Amirault*). Cf. *Commonwealth* v. *Bean*, 435 Mass. 708, 715 n.17 (2002) (*Bean*). It is a "lewd" exhibition of the genitals, pubic area, buttocks, or female breast that is required. In deciding whether a particular exhibition of the naked body is lewd, the courts have utilized the so-called *Dost*[5] factors as a starting point for analysis, recognizing that they are not dispositive or comprehensive, but aids to further analysis. See *Bean, supra* at 713-714; *Amirault, supra* at 32; *United States* v. *Frabizio,* 459 F.3d 80, 87 (1st Cir. 2006) (*Frabizio*). Those factors are as follows:

> "1. whether the focal point of the visual depiction is on the child's genitalia or pubic area;[6]

> "2. whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

---

[5]See *United States* v. *Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), aff'd sub nom. *United States* v. *Wiegand*, 812 F.2d 1239 (9th Cir.), cert. denied, 484 U.S. 856 (1987).

[6]The *Dost* factors were originally developed with reference to Federal child pornography statutes that, unlike our statute, do not include the lewd display of a child's breast as potentially pornographic. See *United States* v. *Dost*, 636 F. Supp. at 830.

"3. whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

"4. whether the child is fully or partially clothed, or nude;

"5. whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

"6. whether the visual depiction is intended or designed to elicit a sexual response in the viewer."[7]

*United States* v. *Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), aff'd sub nom. *United States* v. *Wiegand*, 812 F.2d 1239 (9th Cir.), cert. denied, 484 U.S. 856 (1987). See *Frabizio, supra* at 87.

The standard of review is disputed by the parties. The Commonwealth contends that the *Latimore* standard applies because there has not been an express First Amendment challenge to the evidence. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). The defendant, relying on *Bean, supra* at 714 & n.15, states that whether the photograph constitutes a "lewd exhibition" is subject to de novo review. We agree that *Bean* establishes the standard of review of the jury's determination, and that we are required to undertake an independent review of the photographic evidence to ensure that the jury have not encroached on expression protected by the First Amendment.

*Bean* involved a prosecution under G. L. c. 272, § 29A, which makes it a crime for any person, acting with lascivious intent, to pose a child, knowing he or she is under eighteen years of age, in a state of nudity. The defendant, an aspiring amateur photographer, had asked a teenager to pose with her boyfriend. 435 Mass. at 709. Four of the photographs he took depicted the minor with her breast exposed. *Id.* at 711. These photographs were the "primary evidence" of whether the defendant had "lascivious" intent. *Id.* at 714-715. The court stated that in evaluating this evidence, "we determine de novo whether the photographs are themselves 'lascivious' or otherwise provide sufficient evidence of lascivious intent." *Id.* at 714. See *Amirault,*

---

[7]We note that the substance of most of these factors was incorporated by the Legislature in the context of defining lascivious intent pursuant to G. L. c. 272, § 31. See *Bean*, 435 Mass. at 712-713.

173 F.3d at 32-33. In the course of describing the nature of this independent review, the court distinguished it from the *Latimore* standard and stressed that "[t]he fact finder is in no better position to evaluate the content and significance of these photographs than an appellate court." *Bean, supra* at 714 n.15. The court relied on a line of United States Supreme Court cases decided under the First Amendment that required an "independent appellate review of the offending material to ensure that protected speech is not infringed." *Id.* at 714. See, e.g., *Bose Corp.* v. *Consumers Union of U.S., Inc.*, 466 U.S. 485, 505 (1984) (in First Amendment cases "the Court has regularly conducted an independent review of the record both to be sure that the speech in question actually falls within the unprotected category and to confine the perimeters of any unprotected category within acceptably narrow limits"). This line of cases can be traced back to a concurrence by Justice Harlan in *Roth* v. *United States*, 354 U.S. 476 (1957), an obscenity case, in which he stated that "a reviewing court must determine for itself whether the attacked expression is suppressable within constitutional standards" and "can[not] escape this responsibility by saying that the trier of the facts, be it a jury or a judge, has labeled the questioned matter as 'obscene.' "[8] *Id.* at 497 (Harlan, J., concurring). Rather, the appellate court must exercise "its own independent judgment upon the character of the material." *Id.* at 498. Independent review is required in the instant case "because photographs depicting the breast or genitals of a minor have been held to be protected by the First Amendment as long as they are not lewd or lascivious . . . ." *Bean, supra* at 714-715.

With these standards in mind, we evaluate the photograph at issue to determine whether it is lewd. We begin with the six *Dost* factors. The first is whether the focal point of the visual depiction is on the girl's genitalia, pubic area, or breasts. As explained above, we conclude that it is. The girl's developing

---

[8]As previously explained, *Roth* v. *United States, supra*, was an obscenity case. Child pornography need not be obscene to be subject to criminal penalties. See *New York* v. *Ferber*, 458 U.S. at 756-766. See also *Ashcroft* v. *Free Speech Coalition*, 535 U.S. 234, 249 (2002). We employ the standards set out in *New York* v. *Ferber, supra*, to guide our independent review to determine whether prosecution for possession of the photographs intrudes on expression protected by the First Amendment.

left breast and nipple are in the front and center of the photograph. The girl's left hand points the viewer to her exposed pubic area. See *Frabizio*, 459 F.3d at 86 (reversing decision to exclude photographs from jury's consideration as photographs "could reasonably be seen as focusing on or particularly drawing attention to the girls' pubic areas"). Compare *Amirault*, 173 F.3d at 33 (lighting and composition of "photograph [are] not primarily directed at the genital region"). The eye of the viewer is also directed to the girl's right nipple.

The setting of the visual depiction — the beach — is not generally sexually suggestive. See *ibid*. The pose, however, is more problematic. On appeal, the Commonwealth contends that the left hand placement depicts the girl as "about to touch herself there or masturbate."[9] Although we are not prepared to adopt that interpretation, as the girl appears just to be about to dig in the sand in front of her, the direction and curve of the left hand toward her exposed pubic area could be viewed as sexually suggestive.

The girl is nude. She is also "on the cusp of puberty . . . of an age when girls normally are clothed even when in nature or in a stream." *Frabizio*, 459 F.3d at 86. She is well past the age of the "Coppertone girl."[10]

The visual depiction of the girl does not suggest sexual coyness or a willingness to engage in sexual activity, although the placement of the left hand, as explained above, is problematic. Finally, as the over-all design of the visual depiction is to direct the viewer to the girl's developing breasts and pubic area, and the pose could be seen as sexually suggestive, we conclude that it is designed to elicit a sexual response.[11]

Recognizing the limitations of the *Dost* factors, and our obligation to ensure that First Amendment expression rights are not being infringed, our independent review of the photograph has

---

[9]At trial, the Commonwealth referenced the placement of the hand ("Did you pause when you saw the picture because of the position of her hand") and argued that the pubic area, along with the developing breasts, were the "focus of the picture."

[10]The toddler depicted in the other picture of the girl at issue is, in contrast, of the age of the girl in the Coppertone advertisement.

[11]It is not the defendant's subjective reaction to the photograph that is measured in this inquiry. See *Amirault*, 173 F.3d at 34.

also included a search for signs that the photograph is not a "mere snapshot[] intended to titillate potential viewers" and instead constitutes a form of artistic, educational, or other personal exhibition or expression protected by the First Amendment. *Bean*, 435 Mass. at 715. Although an exhibition of a child's breasts and pubic area may still be lewd even if it is contained within a work that includes other protected First Amendment expression, see *New York* v. *Ferber*, 458 U.S. at 761, 763-764, and *Bean*, *supra*, where First Amendment rights are at issue we must approach both the lewdness determination and the suppression of the photograph with even greater circumspection.[12] We understand that such a photograph does not have to have any level of artistic or educational value to be protected. It just needs to be not lewd. The focus of this inquiry is whether, in addition to our application of the *Dost* factors, other evidence or characteristics of the photograph indicate that it is not lewd.

In the instant case, we discern no such signs that this photograph is other than a lewd exhibition of this girl's breasts and pubic area. Nor was any expert or other testimony presented that raises questions in this regard. Compare *Bean*, *supra* at 715 ("consistent with the testimony of Bean's expert in art history and theory, the photographs appear intended to have an artistic quality independent of their specific subject matter"). The picture was found on a Russian photograph-sharing Web site, not in a medical textbook, National Geographic pictorial, or in an art museum.[13] See *New York* v. *Ferber*, 458 U.S. at 772. The photograph appears to serve no educational purpose. It displays no obvious artistic sensibilities beyond a design that focuses the viewer's attention on the girl's breasts and pubic area. There is no indication that the photograph is commenting in some fashion on other artistic works. See Adler, Inverting the First Amend-

---

[12]It was just such a concern that motivated Justice Harlan to propose an independent review in the context of obscenity. As Justice Harlan stated, "Many juries might find that Joyce's 'Ulysses' or Bocaccio's 'Decameron' was obscene, and yet the conviction of a defendant for selling either book would raise, for me, the gravest constitutional problems . . . ." *Roth* v. *United States*, 354 U.S. at 498 (Harlan, J., concurring).

[13]In closing, defense counsel pointed to National Geographic and art museums as examples of places that contain exhibitions of naked children that are not lewd. The Commonwealth similarly closed by saying that the statute does not ban images in medical textbooks or bona fide works of art.

ment, 149 U. Pa. L. Rev. 921, 967-968 (2001). Finally, and perhaps most importantly, the focus on the girl's developing breasts and pubic area distinguishes it from ordinary family photographs simply memorializing a day at the beach. Cf. *United States* v. *Brown*, 579 F.3d 672, 684 (6th Cir. 2009), cert. denied, 130 S. Ct. 1106 (2010). If there are any expressive interests at stake in this photograph, they are de minimis. See *New York* v. *Ferber, supra* at 762.

The statutory purposes further support our conclusion that this photograph is lewd and its possession is outlawed. As the General Court stated, "[T]he sexual exploitation of children constitutes a wrongful invasion of a child's right to privacy and results in social, developmental and emotional injury to such child." This girl's developing sexuality is being exploited by the taking and sharing of this revealing snapshot of her breasts and pubic area. She is on "the cusp of puberty," *Frabizio*, 459 F.3d at 86, at a vulnerable stage in her sexual and emotional development, and her privacy is being invaded. She is of course readily identifiable in these photographs by anyone who knows her. The picture is also circulating in public and not concealed in a family drawer, thereby compounding the victimization of the girl. See St. 1997, c. 181, § 1 (Legislature emphasizes that all child pornography needs to be removed to protect children from invasion of privacy). The viewing of the revealing photograph amounts to a "continuing victimization" of her. St. 1997, c. 181, § 1.

The photograph need not capture the child engaged in sexual activity, and therefore sexual abuse, to violate the statute, as the dissent suggests. The Legislature refers to both sexual abuse and sexual exploitation. The State's compelling interest in protecting children extends to their psychological and emotional well-being as well as their physical well-being. See *New York* v. *Ferber*, 458 U.S. at 757; *Commonwealth* v. *Kenney*, 449 Mass. at 848. The lewd exhibition prong of this statute in particular targets exploitation that does not involve the child engaged in sexual acts, or even simulated sexual acts. *Commonwealth* v. *Kenney, supra* at 850 n.7. The exhibition of the girl's breasts and pubic area also need not be obscene to be lewd. *Id.* at 848.

In sum, although this is not a simple case involving, for

example, a stark close-up of a naked child's open genitalia, our independent review confirms that this is a lewd exhibition of a child's breasts and pubic area and therefore an exploitation of her developing sexuality.

*Jury instructions.* The defendant also challenges the judge's failure to give two jury instructions regarding the meaning of "lewd exhibition" that he repeatedly requested at trial. Those requested instructions were that "mere nudity is not enough" to constitute lewd exhibition and that the defendant's "reaction to the photograph and why he wanted to possess it" is irrelevant to whether the photograph is a lewd exhibition. Although neither instruction was given as requested, the judge did instruct that "what [the defendant] was going to do with the material is not for you to consider . . . . It is not relevant." See *Commonwealth* v. *Sanders*, 451 Mass. 290, 300 (2008) ("It is not necessary to give the exact words of the instruction requested by the defense"). Moreover, at the close of the case, defense counsel declared that her client was "content" with the instructions that the judge ultimately gave. We conclude that there was no error in refusing to give the mere nudity instruction, and if there was an error in the second instruction, it did not rise to the level of a substantial risk of miscarriage of justice.

The judge's instructions tracked the statutory requirements and the *Dost* factors. She informed the jury that it was for them to "decide the weight, or lack of weight to be given to any of these factors." Additionally, the judge emphasized that the factors were "not exhaustive" and provided only "some guidance." She further informed the jury that "as far as defining lewd exhibition, the courts say that those are words that are within the ken of ordinary jurors and that they should be given the meaning that ordinarily attach to those words." See, e.g., *Frabizio*, 459 F.3d at 85, quoting from *United States* v. *Arvin*, 900 F.2d 1385, 1390 (9th Cir. 1990), cert. denied, 498 U.S. 1024 (1991) ("Indeed, '[t]here is a consensus among the courts that whether the item to be judged is lewd, lascivious, or obscene is a determination that lay persons can and should make' ").

We discern no error in the judge's instructions, as they correctly summarize the law. Although it was within her discretion to give the additional instruction that mere nudity is not enough,

it was not required.[14] Nor would that instruction have been self-explanatory. The girl's age and pose, and the focal points of the photograph, were all relevant considerations here in addition to the child's nudity. Furthermore, defense counsel clearly made the "mere nudity" point in closing argument.

As for the other requested instruction, the judge and prosecutor were concerned that the defendant's reasons for selecting the photograph were relevant to proving that the defendant knowingly printed out and possessed the photograph. That being said, the judge could have stated more clearly that the defendant's subjective reaction to the photograph was not relevant to the jury's determination of the lewdness of the photograph itself. Regardless, even if error, it did not create a substantial risk of a miscarriage of justice. The judge properly recited the law and the *Dost* factors, which adequately instructed the jury on the lewdness inquiry. In addition, both the Commonwealth and the defendant focused the jury's attention on the "four corners" of the photograph in measuring lewdness. Cf. *Frabizio*, 459 F.3d at 89-90.

*Admission of other photographs.* Finally, the defendant claims reversible error based on the admission in evidence, over his objection, of a number of other photographs of children that he viewed that day at the library. The defendant contends that these photographs were improperly admitted because he did not contest his knowing possession of the photograph in question, and therefore the only issue was whether the particular photograph was lewd.

There was, however, no stipulation regarding knowing possession of the photograph. As explained in the discussion of the integrity of the grand jury process, when originally confronted by the librarian, the defendant claimed that the picture just "popped up." Additionally, some of the photographs were of the same girl at the beach, lending some context to the photograph. The photographs were also all found in a search category

---

[14]To the extent that the dissent asserts that the prosecutor's closing argument relied on a "nudity alone" theory, the claim misses the mark. The Commonwealth's argument was not so limited, as it addressed other *Dost* factors. Nor has the defendant argued on appeal that the prosecutor's closing argument was improper. Finally, as discussed above, the judge's instructions, which tracked the statute and referenced all of the *Dost* factors, were proper.

for "kids," which was relevant to whether the child was under eighteen, an issue that was contested by the defendant.[15] The judge also provided a limiting instruction, charging the jury as follows:

> "Any other pictures that this witness is discussing and that may be put into evidence for you to see are only to be used by you to determine whether [the defendant] intended to download this particular photograph, and whether that is the absence of mistake or inadvertence, and may be used by you secondly to go to his knowledge of what he was downloading. But it . . . should not be used at all for evidence of bad character or whether the other pictures were appropriate or not."

A similar instruction was also given during the final jury charge at the defendant's request. We discern no abuse of discretion in the judge's admission of these photographs.[16]

*Judgment affirmed.*

MILKEY, J. (dissenting). Few things are as vile as the sexual abuse of children. It is therefore understandable that we, as a society, would implement severe measures to try to prevent such abuse from occurring. But when we imprison someone for mere possession of a photograph of a naked child playing on a beach, we have lost all perspective. For the reasons detailed below, I respectfully dissent.

A. *Sufficiency of the indictment.* Because the defendant effectively conceded that he had adequate notice of the relevant charges against him, I am sympathetic to the majority's efforts to find the indictment sufficient.[1] After all, if the principal purpose that the indictment is designed to serve has been satis-

---

[15]The other photographs also provided some limited information as to the Russian photograph-sharing site, thereby responding to the defendant's suggestion that it was not a pornography site but an ordinary photograph-sharing service.

[16]The judge also excluded many other photographs that the prosecution sought to admit from the defendant's previous convictions. Evidence of his previous convictions was also excluded.

[1]Of course, the fact that the case has now been fully tried (twice) creates an : r ntive to find the indictment sufficient. But as to this issue, I note that once

fied, how can there be a problem? In addition, I have no quarrel with the idea that we may rely on the caption of an indictment to help inform the substance of the charges.

Nevertheless, the indictment here was so inexcusably mangled that I remain concerned about our deeming it sufficient.[2] None of the cases on which the majority relies goes this far, and I am troubled by the standards we are setting. Moreover, assuming that the caption of the indictment can be taken to supply the key missing allegation that the photograph at issue was of the sort prohibited by the statute, the indictment would still fail to allege that the defendant had specific knowledge of the "nature and content" of the photograph. See G. L. c. 272, § 29C(vii). This would appear to be at odds with *Commonwealth* v. *Palladino*, 358 Mass. 28 (1970).[3] Although some of *Palladino*'s "broad language has been limited by subsequent decisions," *Commonwealth* v. *Militello*, 66 Mass. App. Ct. 325, 339 (2006),

---

the trial judge sua sponte raised the problem about the wording of the indictment during the defendant's first trial, defense counsel sought dismissal of the indictment on this basis but volunteered to the judge that the defendant could be retried on a proper indictment without violating double jeopardy. Had the problem with the indictment been addressed at that point, all that might have been lost was one day of jury selection.

[2]The body of the indictment here charged the defendant only with conduct that is indisputably not a crime: possessing a photograph of a child.

[3]In *Palladino*, the court found that several complaints charging possession of obscene materials with intent to distribute them, G. L. c. 272, § 28A, repealed by St. 1974, c. 430, § 2, were insufficient because they failed to allege the defendant's "knowledge of the nature of the material." 358 Mass. at 32. That element, which is distinct from the general scienter for possession offenses, is "knowledge of a more specific kind," *Commonwealth* v. *Bacon*, 374 Mass. 358, 361 (1978), and proof of it is constitutionally required to convict a defendant of possession of either obscenity or child pornography. *Smith* v. *California*, 361 U.S. 147, 152-154 (1959). *New York* v. *Ferber*, 458 U.S. 747, 765 (1982). Section 29C(vii) enumerates each scienter separately, requiring proof both that a defendant "knowingly purchase[d] or possesse[d]" the material and that he did so "with knowledge of the nature or content thereof." The indictment in this case, like the complaints in *Palladino, supra*, failed to allege the "knowledge of the nature or content" element. Subsequent Massachusetts cases have narrowed the thrust of *Palladino* without overruling it. Together, *Palladino* and the cases that distinguish it establish that while the general knowledge element need not be alleged in a complaint or indictment, the "knowledge of a more specific kind" at issue in speech cases must be. *Commonwealth* v. *Bacon, supra* at 360-361. See *Commonwealth* v. *Green*, 399 Mass. 565, 567 (1987); *Commonwealth* v. *Militello*, 66 Mass. App. Ct. 325, 339 (2006).

that case's narrow holding still appears to stand. Perhaps the Supreme Judicial Court would reverse *Palladino* if asked to do so, but until that happens, it is our role to follow that case.[4]

B. *Sufficiency of the evidence.* 1. *The photograph.* The underlying facts are not in dispute. The debate is not over what can be seen in the photograph,[5] but whether it makes out a crime when measured against the relevant legal standards.

The photograph shows an unclothed girl kneeling in the sand. A "flip-flop" sandal lies askew in the background, and there is no dispute that the setting is a beach. Although there is no way of knowing the girl's exact age, she appears to be approximately eleven to twelve years old, as the Commonwealth maintained and as reasonable jurors could have concluded. The girl is not looking at the camera, and her gaze instead appears focused on the area of the beach immediately in front of her, where there is a small hole in the sand. Her sand-flecked arms are pointed in that direction and they appear to be reaching toward the hole. Her left hand, captured by the photograph in mid-air, and the hand's shadow obscure a view of her genitals, although the area in the immediate vicinity of her genitals can be seen. Her partially developed breasts are also plainly visible.

The photograph has a distinct "snapshot" quality to it, and the Commonwealth never argued to the jury that the girl was posed. As the prosecutor acknowledged to the jury, "it seems like [the girl] is completely unaware that someone is taking her picture."[6] The jury had no information about who the girl is, what beach she was on, or who the photographer was. Thus, for example, the jury did not know if this was a vacation photograph taken by a member of the girl's family, or if it was instead surreptitiously

[4]I agree with the majority's analysis of the *O'Dell* issue. See *Commonwealth* v. *O'Dell*, 392 Mass. 445 (1984).

[5]The photograph was admitted in evidence and it shows whatever it shows. The only possible debate regarding the photograph has to do with whether the girl's genitals are visible. The photograph does not support the Commonwealth's position, asserted for the first time on appeal, that "[a] portion of her genitalia is exposed."

[6]The majority emphasizes that the girl "is not smiling." *Ante* at 301. True enough. Neither is she frowning. In fact, her expression is utterly unremarkable, and no one can plausibly claim to know what she may have been thinking or feeling when this moment was captured. The Commonwealth's claim in its brief that the girl looks "sad and defeated" amounts to pure fancy.

captured by a stranger. The defendant downloaded the photograph from a Russian photograph-sharing Web site. That Web site does not market itself as a pornographic site, and a Commonwealth witness acknowledged that it is a publicly accessible photograph-sharing site — similar to "Snapfish," "Flickr," and "Picasa" — that included what appeared to be "a lot of vacation photographs."

2. *The issue in dispute.* The photograph found in the defendant's possession unquestionably shows the girl's "unclothed . . . partially developed breast[s]." G. L. c. 272, § 29C(vii). It is also fair to characterize the photograph as showing her unclothed "pubic area" (even if the anatomical boundaries of that statutory term remain unclear).[7] However, for there to have been a violation of § 29C(vii), the photograph must additionally rise to the level of a "lewd exhibition" of her unclothed breasts or pubic area. G. L. c. 272, § 29C(vii).[8] Indeed, as both the United States Supreme Court and the Supreme Judicial Court have long recognized, a statute that sought to punish the portrayal of mere nudity, even of children, would be constitutionally infirm. See *Osborne* v. *Ohio*, 495 U.S. 103, 112-114 (1990); *Commonwealth* v. *Provost*, 418 Mass. 416, 423 (1994); *Commonwealth* v. *Bean*, 435 Mass. 708, 711, 715 n.17 (2002) (*Bean*). The cases have long established that nudity, without more, does not establish "lewdness" or "lasciviousness."[9] See, e.g., *Provost, supra; Bean, supra* at 715 n.17; *United States* v.

---

[7]As noted, the girl's genitals cannot be seen. Whether the photograph shows her "pubic area" depends on how you define where that area begins and ends. Neither the majority nor the parties has focused on this issue. For a discussion of the issue in anatomical detail, see *United States* v. *Knox*, 977 F.2d 815, 819-820 (3d Cir. 1992), vacated on other grounds, 510 U.S. 939 (1993), *S.C.*, 32 F.3d 733 (3d Cir. 1994), cert. denied, 513 U.S. 1109 (1995).

[8]Otherwise, the term "lewd exhibition" would be rendered mere surplusage. See, e.g., *Commonwealth* v. *Disler*, 451 Mass. 216, 227 (2008) ("Every word in a statute should be given meaning . . . , and no word is considered superfluous"). Under the express words of the statute, there needs to be a "lewd exhibition" even of "partially developed" breasts. This directly undercuts the suggestion that a photograph is "lewd" by definition if it shows a naked girl "on the cusp of puberty." *Ante* at 305, quoting from *United States* v. *Frabizio*, 459 F.3d 80, 86 (1st Cir. 2006).

[9]The parallel subsection of the Federal child pornography statute criminalizes images containing a "lascivious exhibition of the genitals." 18 U.S.C. § 2256(2)(A)(v) (2006). The Federal courts have found that the terms "lewd" and "lascivious" are "virtually interchangeable" in this context. *United States* v. *Wiegand*, 812 F.2d 1239, 1243-1244 (9th Cir.), cert. denied, 484 U.S. 856

*Arvin,* 900 F.2d 1385, 1391 (9th Cir. 1990), cert. denied, 498 U.S. 1024 (1991); *United States* v. *Amirault,* 173 F.3d 28, 33, 35 (1st Cir. 1999) (*Amirault*); *United States* v. *Russell,* 662 F.3d 831, 843 (7th Cir. 2011), cert. denied, 132 S. Ct. 1816 (2012).

3. *The* Dost *factors.* As the majority accurately notes, in seeking to lend substance to the meaning of lewdness (or its linguistic twin, lasciviousness), courts have often looked to the so-called *Dost* factors. See *ante* at 302-303; *United States* v. *Dost,* 636 F. Supp. 828, 832 (S.D. Cal. 1986), aff'd sub nom. *United States* v. *Wiegand,* 812 F.2d 1239 (9th Cir.), cert. denied, 484 U.S. 856 (1987). For example, the United States Court of Appeals for the First Circuit relied on the *Dost* factors in determining that a photograph of a naked girl on a beach was not a lascivious exhibition, *Amirault, supra,* and the Supreme Judicial Court relied on them in determining that a photograph that revealed a fifteen year old girl's breast did not establish the photographer's "lascivious intent." *Bean, supra* at 715-716. The photograph here is not lewd under a straightforward application of the *Dost* factors. This should hardly be surprising, because even a cursory examination of those factors and of the decades of case law applying them reveals that they are principally aimed at a particular species of lewdness not presented here: photographs of children deliberately posed in a manner or setting designed to sexualize them.[10] In contrast, the photograph here is a candid, unposed snapshot of a girl apparently playing on a beach. "When a photographer selects and positions his subjects, it is quite a different matter from the peeking of a voyeur upon an unaware subject pursuing activities unrelated to sex." *United States* v. *Steen,* 634 F.3d 822, 828 (5th Cir. 2011).[11]

In any event, the *Dost* factors do not support a conclusion

---

(1987). We thus may look to Federal constructions of the term "lascivious exhibition of the genitals" for instruction in our interpretation of G. L. c. 272, § 29C(vii).

[10]Examples of this type of lewdness can be found among the other photographs that the defendant viewed (but for which he was not charged). For example, one such photograph shows a young girl sitting in an armchair, looking at the camera, with her legs spread as wide as possible to reveal a view of her underpants. In this manner, the girl is shown, albeit clothed, in an unnatural pose self-evidently designed to sexualize her.

[11]In *Steen,* the defendant had secretly filmed a girl in a private room at a tanning salon. Even though the film revealed the girl's naked pubic area, the

that this photograph contains a "lewd exhibition." As the Supreme Judicial Court has noted, a "beach setting is [a] 'natural landscape' that is not generally associated with sexual activity." *Bean*, 435 Mass. at 716 n.18, citing *Amirault*, 173 F.3d at 33. The girl is not engaged in any sexual activity (as the prosecutor expressly acknowledged to the jury), nor is she posed to exhibit any willingness to engage in such activity. Indeed, as the prosecutor also acknowledged below, she does not appear even to be aware that her picture is being taken. Such a photograph can be considered "lewd" under the *Dost* factors only if those factors are stretched beyond recognition. See *United States* v. *Steen, supra* at 827 (questioning the applicability of the *Dost* factors "where a defendant's conduct . . . proved to be no more than voyeurism"); United States *vs.* Johnson, U.S. Dist. Ct., No. 2:10-CR-71-FtM-36DNF (M.D. Fla. June 15, 2011) (finding that images obtained by secretly recording a minor not engaged in sexual activity "constitute voyeurism and not child pornography").

To be sure, some of the *Dost* factors are sufficiently malleable that some argument can be made that they apply. However, a closer examination of those factors demonstrates the inappropriateness of resting a determination of lewdness on them, at least in this context. A good example is the first *Dost* factor: "whether the focal point of the visual depiction is on" a forbidden anatomical area. 636 F. Supp. at 832. In her closing argument, the prosecutor repeatedly referenced the child's developing breasts (and, to a lesser degree, her pubic area) as the "focal point" of the photograph. She made no effort to explain what made them so. The majority strives to supply what eluded the Commonwealth at trial: a critical assessment of how the visual elements that make up the snapshot's "design" objectively accentuate the girl's sexuality. But one hardly needs such analysis to explain that a viewer's gaze may well be drawn to the girl's developing breasts. To the extent that one's eyes are drawn there, that fact is neither remarkable nor of significant import.

United States Court of Appeals for the Fifth Circuit concluded that — as a matter of law — the film did not constitute a "lascivious exhibition." 634 F.3d at 828. In the case at bar, the girl was not only photographed seemingly unaware as she "pursu[ed] activities unrelated to sex," *ibid.*, she was doing so in what was, from all appearances, a fully public setting.

As the Supreme Judicial Court emphasized in *Bean*, whether a viewer sees a naked breast or other body part as the focal point of a photograph is often "a subjective assessment of little value." *Bean, supra* at 716.[12] To some extent, a viewer's attention may be drawn to the image's portrayal of the girl's breasts in part precisely because her evolving sexuality invokes cultural taboos. See *United States* v. *Frabizio*, 459 F.3d 80, 93 (1st Cir. 2006) (Torruella, J., concurring) ("The images are jarring, more because of the cultural taboo regarding nude pictures of prepubescent girls than because of the specific portrayal of the girls"). In fact, here as with the beach photograph in *Amirault*, the "truly striking aspects of the photograph [are] the girl's nakedness and her youth." 173 F.3d at 35. But "[t]hese factors alone are not enough to render the photo 'lascivious.' " *Ibid.*[13]

Also problematic is the sixth *Dost* factor, which asks "whether the photograph is intended or designed to elicit a sexual response in the viewer." 636 F. Supp. at 832. The First Circuit has identified this factor as "the most confusing and contentious of the *Dost* factors." *Amirault*, 173 F.3d at 34. Applying this factor makes some sense in the context of a prosecution against the photographer. In that context, "[i]t [is] logical . . . to hold that

[12]The limited import of evaluating whether a child's nakedness is the focus of a visual depiction is underscored by both the majority and dissenting opinions in *Osborne* v. *Ohio*, 495 U.S. 103. That case involved an Ohio statute that on its face punished the possession of images of naked children. The Ohio Supreme Court had ruled that only "lewd exhibitions" or those that had a "graphic focus" on the child's genitalia could be subject to prosecution. *Id.* at 107, 113. In upholding the Ohio statute against a claim that it was facially overbroad, the majority opinion applied its own further limiting gloss: "The crucial question is whether the depiction is lewd, not whether the depiction happens to focus on the genitals or the buttocks." *Id.* at 114 n.11. In dissent, in reference to the Ohio Supreme Court's "graphic focus" language, Justice Brennan emphasized: "Not only is this factor dependent on the perspective and idiosyncrasies of the observer, it is also unconnected to whether the material at issue merits constitutional protection. Simple nudity, no matter how prominent or 'graphic,' is within the bounds of the First Amendment. Michelangelo's 'David' might be said to have a 'graphic focus' on the genitals, for it plainly portrays them in a manner unavoidable to even a casual observer." *Id.* at 138 (Brennan, J., dissenting).

[13]The fourth *Dost* factor simply asks whether the child is nude, a factor that alone cannot support a finding of "lewdness." 636 F. Supp. at 832. See *Steen*, 634 F.3d at 827 ("Surreptitiously filming a nude tanner, on its own, does not meet the standard for producing child pornography").

the picture[] [is] 'a lascivious exhibition because the photographer arrayed it to suit his peculiar lust.' " *United States* v. *Rivera,* 546 F.3d 245, 252 (2d Cir. 2008), cert. denied, 555 U.S. 1204 (2009), quoting from *United States* v. *Wiegand,* 812 F.2d at 1244. Even in that context, some courts have noted that the sixth factor adds little, if any, independent value to a factors-based analysis.[14] See, e.g., United States *vs.* Clark, U.S. Ct. App., No. 10-4520, slip op. at 4-5 (3d Cir. Nov. 22, 2011), cert. denied, 132 S. Ct. 1778 (2012), quoting from *United States* v. *Villard,* 885 F.2d 117, 125 (3d Cir. 1989) ("the sixth factor, 'rather than being a separate substantive inquiry about the [depictions], is useful as another way of inquiring into whether any of the other five . . . factors [is] met' ").[15] The problematic role played by the sixth factor is heightened in a possession case given that the possessor of a photograph is not necessarily the one who "intended or designed" the composition. See *United States* v. *Rivera, supra* at 252 ("The sixth *Dost* factor is not easily adapted to a possession case").[16] Even to the extent that

[14]In defining "lascivious intent," the Legislature incorporated a version of the first five *Dost* factors but omitted the sixth. See G. L. c. 272, § 31. Thus, the Supreme Judicial Court had no occasion to consider the sixth *Dost* factor in *Bean* (a prosecution pursuant to G. L. c. 272, § 29A, in which the Commonwealth had to prove "lascivious intent"). However, the omission of the sixth factor from the definition of "lascivious intent" appears to reflect the Legislature's recognition that the sixth *Dost* factor largely duplicates the overarching inquiry into whether a photographer acted with "lascivious intent" in producing a photograph. Compare *Doe* v. *Chamberlin,* 299 F.3d 192, 196 (3d Cir. 2002) ("The final *Dost* factor simply puts again the underlying question: Is the exhibition lascivious?").

[15]For its part, the majority engages in no independent analysis of the sixth factor, instead concluding that the image is "designed to elicit a sexual response" because "the over-all design of the visual depiction is to direct the viewer to the girl's developing breasts and pubic area" and "the pose could be seen as sexually suggestive." *Ante* at 305. In other words, the majority asserts that because in its view the first and third *Dost* factors are satisfied, the sixth factor is as well.

[16]Given that *Dost* itself was a prosecution for production of child pornography, it is unsurprising that the *Dost* factors are tailored to such cases. The failure to distinguish between production and possession cases helps explain the frustration and confusion expressed by some courts when attempting to apply the sixth factor. See, e.g., *United States* v. *Villard,* 885 F.2d 117, 125 (3d Cir. 1989); *Amirault,* 173 F.3d at 35; *United States* v. *Hill,* 322 F. Supp. 2d 1081, 1086 (C.D. Cal. 2004), aff'd, 459 F.3d 966 (9th Cir. 2006), cert. denied, 549 U.S. 1299 (2007).

the underlying considerations that animate the sixth factor are relevant in a possession case, it makes little sense to try to get at these considerations by shoe-horning them into one "factor" in a six-part factor-based analysis. Put differently, the test of time has demonstrated that the *Dost* factors cannot bear the full analytical weight that has at times been placed on them. Rather than treating the *Dost* factors as providing the overarching doctrinal framework under which lewdness issues should be analyzed, it makes far more sense to treat them as helpful considerations especially designed to ferret out a particular type of lewdness not present here.

4. *Otherwise lewd.* Of course, a photograph that is not lewd under the *Dost* factors may still be lewd for other reasons. See *United States* v. *Frabizio*, 459 F.3d at 87 (sharply criticizing a District Court judge for resting on an "unqualified application" of the *Dost* factors and for failing to consider whether the beach photographs at issue there could be considered lascivious for other reasons). In *Frabizio*, the First Circuit emphasized that the *Dost* factors were never intended to be exclusive, and it aptly pointed out that, in upholding the original use of these factors, the United States Court of Appeals for the Ninth Circuit described them as "over-generous to the defendant." *Id.* at 88, quoting from *United States* v. *Wiegand*, 812 F.2d at 1244. See *United States* v. *Steen*, 634 F.3d at 829 (Higginbotham, J., concurring) (*Dost* "factors often create more confusion than clarity").

Such observations are well taken as far as they go; while *Dost* was a well-meaning effort to lend some objectivity to the elusive question where the boundary between mere nudity and lewdness lies, its many shortcomings have been well documented.[17] However, once one leaves the *Dost* factors behind, the question remains: against what standard should "lewdness" be assessed? In the context of considering the analogous Federal statute, the First Circuit flatly declined to address this question, commenting that lasciviousness "needs no adornment." *United*

---

[17]See, e.g., *United States* v. *Rivera*, 546 F.3d at 251-252, and cases cited. See also Adler, The Perverse Law of Child Pornography, 101 Colum. L. Rev. 209, 261-265 (2001) (criticizing the *Dost* factors for encouraging courts to view images of children the way a pedophile would, allowing "everything [to] become[] child pornography in the eyes of the law").

*States* v. *Frabizio*, 459 F.3d at 85-86 & n.9.[18] The trial judge in this case followed this hands-off approach,[19] as does the majority.

This approach is untenable. One cannot hope to address whether a visual image of a naked child is "lewd" without knowing what it means for something to be "lewd." Appellate courts have a responsibility to provide clarity on what demarcates the boundary between the exercise of free expression and a lengthy prison term.[20] Failing to provide such guidance threatens to leave the issue to unbridled subjectivity in an area ruled by emotions. That in turn raises both First Amendment and due process concerns. See *Commonwealth* v. *Kenney*, 449 Mass. 840, 850 (2007), quoting from *Commonwealth* v. *Orlando*, 371 Mass. 732, 734 (1977) ("It is well established that due process requires criminal statutes that are not 'sufficiently explicit to give clear warning as to proscribed activities' to be declared unconstitutional. . . . Prohibited imprecision includes ambiguity in the terms of a criminal statute, especially one implicating the right to freedom of expression, that might give rise to arbitrary enforcement").[21] Simply put, someone charged with the heinous

---

[18]In fact, the majority opinion in *United States* v. *Frabizio* eschewed any efforts to explain what the word means, lest the court inadvertently make the scope of the statute's prohibitions narrower than Congress intended. However, the United States Supreme Court has made clear that it is the opposite concern that is paramount. Where a defendant's speech is alleged to fall within a category unprotected by the First Amendment, the role of the courts is "to confine the perimeters of any unprotected category within acceptably narrow limits in an effort to ensure that protected expression will not be inhibited." *Bose Corp.* v. *Consumers Union of U.S., Inc.*, 466 U.S. 485, 505 (1984). In such cases, "[p]roviding triers of fact with a general description of the type of communication whose content is unworthy of protection has not, in and of itself, served sufficiently to narrow the category, nor served to eliminate the danger that decisions by triers of fact may inhibit the expression of protected ideas." *Ibid.* See *United States* v. *Frabizio*, 459 F.3d at 94 (Torruella, J., concurring) (criticizing the majority opinion for not providing further guidance).

[19]The judge told the jury that "as far as defining lewd exhibition, the courts say those are words that are within the ken of ordinary jurors and that they should be given the meaning that ordinarily attach to those words."

[20]Here, having been convicted on a prior occasion of ten counts of the same or similar charges, the defendant received a mandatory prison sentence of ten to fifteen years (to be served concurrently with a sentence he was already serving).

[21]*Commonwealth* v. *Kenney* upheld G. L. c. 272, § 29C, against a claim that it was facially overbroad or void for vagueness. However, the specific arguments that the court rejected involved the term "actually or by simulation," which appears in the statute's first six subsections. The last subsection,

crime of possessing child pornography is entitled to something more than a "trial by Rorschach test."

5. *What makes something "lewd"?* A visual image of a naked child cannot be considered a "lewd exhibition" unless it presents the child in an overtly "sexualized" manner that is tantamount to sexual abuse or exploitation of the child.[22] As discussed below, at least three sources support that conclusion. I begin with the statute's stated purpose.[23]

"The Legislature's purpose in enacting the statute could not be clearer: '[T]o protect children from sexual exploitation . . . [by] prohibit[ing] the production of material which involves or is derived from such exploitation and to exclude all such material from the channels of trade and commerce.' " *Commonwealth* v. *Kenney*, 449 Mass. at 853, quoting from St. 1997, c. 181, § 1(1). Moreover, with regard to the criminalization of the mere possession of child pornography, "the Legislature enacted G. L. c. 272, § 29C, in recognition that the 'mere possession or control of any sexually exploitative material results in continuing victimization of children [because] such material is a permanent record of an act or acts of sexual abuse or exploitation of a child and that each time such material is viewed the child is harmed.' " *Ibid.*, quoting from St. 1997, c. 181, § 1(2).

That G. L. c. 272, § 29C, criminalizes behavior that amounts to the "sexual exploitation" and "sexual abuse" of children is

proscribing "lewd exhibitions," is referenced only in passing in a footnote. The United States Supreme Court did specifically reject an argument that the use of the term "lewd exhibition of the genitals" made a New York child pornography statute constitutionally overbroad on its face, but it did so because "in view of the examples of 'sexual conduct' provided by the statute, [the Court was] willing to assume that the New York courts would not 'widen the *possibly invalid* reach of the statute by giving an expansive construction to the proscription on "lewd exhibition[s] of the genitals." ' " *Osborne*, 495 U.S. at 131 (Brennan, J., dissenting), quoting from *New York* v. *Ferber*, 458 U.S. at 773.

[22]The *Dost* factors are best understood as one means of trying to measure whether a photograph meets this standard.

[23]Typically, the ordinary usage of the language of a statute provides its principal source of meaning. However, one must look to other sources here, because "lewd" has an elastic meaning. Dictionary definitions confirm that the word is commonly used to refer to things ranging from the merely "vulgar" or "indecent" (at one end of the spectrum) to the downright "obscene" (at the other end). See, e.g., Oxford American Dictionary 381 (1980); Merriam-Webster's Collegiate Dictionary 715 (11th ed. 2005).

reinforced by the fact that it is this critical governmental interest that allows a direct content-based restriction on speech. As the United States Supreme Court has recognized, the production of child pornography may be criminalized because that production "is itself the crime of child abuse." *Ashcroft* v. *Free Speech Coalition*, 535 U.S. 234, 254 (2002). See *United States* v. *Stevens*, 130 S. Ct. 1577, 1586 (2010), citing *New York* v. *Ferber*, 458 U.S. at 759 (States have "a compelling interest in protecting children from abuse," and child pornography constitutes a permanent record of that abuse).[24] "The production of the work, not its content," is the target of valid child pornography statutes. *Ashcroft* v. *Free Speech Coalition*, *supra* at 249.[25] The dissemination of child pornography may also be criminalized, but that is because it provides "an economic motive for and [is] thus an integral part of the production of such materials." *New York* v. *Ferber*, *supra* at 761. In turn, in order to prevent the abuse inherent in the production of child pornography, States may even seek to "stamp out this vice at all levels in the distribution chain" by criminalizing its mere possession. *Osborne* v. *Ohio*, 495 U.S. 103, 110 (1990). Contrast *Stanley* v. *Georgia*, 394 U.S. 557 (1969) (holding that the State may not criminalize mere possession of obscenity).

A necessary corollary is that "where the speech is neither obscene nor the product of sexual abuse, it does not fall outside the protection of the First Amendment." *Ashcroft* v. *Free Speech Coalition*, *supra* at 251, citing *New York* v. *Ferber*, 458 U.S. at 764-765. In other words, the class of speech that constitutionally may be restricted is limited to those images whose suppression actually advances the State's compelling interest in preventing the sexual abuse of children — namely, images whose production involved the sexual abuse or exploitation of actual children. See *id.* at 252-254. To the extent that a prohibition on possessing images of naked children fails to further such interests, it is unconstitutional. *Id.* at 244, 254, 256 ("virtual

---

[24]Cf. *Commonwealth* v. *Oakes*, 407 Mass. 92, 97 (1990) (*Oakes II*) ("posing" a minor in order to photograph her is "expressive conduct" entitled to less protection than the "pure speech" of disseminating any photographs produced).

[25]See *United States* v. *Stevens*, 130 S. Ct. at 1586 (noting that child pornography presents a "special case" where the speech is "an integral part" of the independently criminal act of producing child pornography).

child pornography" that does not depict actual children may not be criminalized).

Finally, insight can be drawn from the principle of ejusdem generis. "When elements are listed in a series, the rules of statutory construction require the general phrase to be construed as restricted to elements similar to the specific elements listed." *Commonwealth* v. *Zubiel*, 456 Mass. 27, 31 (2010). The reference in G. L. c. 272, § 29C(vii), to "lewd exhibition[s]" appears at the end of a list of specific sexual acts that children cannot be shown doing.[26] This strongly suggests that for a visual depiction of a naked child to rise to the level of a "lewd exhibition," it has to sexually exploit the child in a manner akin to that done by a photograph of the child engaged in the prohibited sex acts listed in the prior six subsections. It follows that, at a minimum, the photograph must "sexualize" its portrayal of the child's nudity in some material way. See, e.g., *United States* v. *Wallenfang*, 568 F.3d 649, 657 (8th Cir.), cert. denied, 130 S. Ct. 566 (2009), quoting from *United States* v. *Kemmerling*, 285 F.3d 644, 646 (8th Cir.), cert. denied, 537 U.S. 860 (2002) ("A picture is 'lascivious' only if it is sexual in nature").[27]

6. *Is this photograph "lewd"?*[28] As the prosecutor affirmatively conceded below, "there is certainly no sexual activity in this

---

[26]Section 29C of G. L. c. 272 criminalizes the possession of visual material depicting children engaged in seven different categories of activity. The first six involve specific sexual acts (real or simulated), such as sexual intercourse, masturbation, or "lewd fondling, touching, or caressing." These six categories establish fairly bright-line rules. For example, whether a particular photograph depicts a child "actually or by simulation engaged in any act of sexual intercourse with any person or animal" is unlikely to be subject to extended debate. G. L. c. 272, § 29C(i). Nor can there be any reasonable debate that photographs of children engaged in such acts lie outside First Amendment protection.

[27]Cf. *Manuel Enterprises, Inc.* v. *Day*, 370 U.S. 478, 482-483 (1962) ("While in common usage the words [obscene, lewd, lascivious, indecent, filthy or vile] have different shades of meaning, the [Comstock Act] since its inception has always been taken as aimed at obnoxiously debasing portrayals of sex" [footnote omitted]).

[28]The analysis that follows focuses on the term "lewd" and assumes arguendo that an unposed snapshot taken in public could amount to a lewd "exhibition." However, even this is in doubt. The term "exhibition" suggests that the Legislature had in mind portrayals of children that had been posed (or otherwise actively engaged in the taking of the picture), not passive subjects who may well be unaware of the photograph's existence. To the same effect is

picture." In contending that the photograph is nevertheless lewd, the Commonwealth now focuses especially on the proximity of the girl's left hand to her pubic area. Although no one can say with certainty what exactly the girl is doing with her hands, she appears to be playing in the sand (as the majority acknowledges). However, according to the Commonwealth, the happenstance of where the girl's hand ended up frozen in time allowed a viewer to fantasize about the girl masturbating.[29] In other words, the Commonwealth's new theory is that the photograph is accidentally lewd. The majority appears to accept this argument, concluding that "the direction and curve of the left hand toward [the girl's] exposed pubic area could be viewed as sexually suggestive." *Ante* at 305.

Perhaps this defendant selected the photograph for the very reason that the Commonwealth now highlights. However, whether the defendant found this photograph lewd is not the test. "If [the defendant's] subjective reaction were relevant, a sexual deviant's quirks could turn a Sears catalog into pornography."[30] *Amirault,* 173 F.3d at 34. How a platonic observer would view the placement of the hand is somewhat imponderable. Some reasonable viewers will view the girl's hand simply in motion on its way to (or back from) the hole in the sand in front of her. Other reasonable viewers will no doubt agree with the majority's view that the placement of the hand "could be

the characterization in G. L. c. 272, § 31, of "lewd exhibition" as a form of sexual "conduct." Strictly speaking, the definition of "sexual conduct" in § 31 expressly applies only to sections other than § 29C.

[29]In its brief, the Commonwealth suggested that the unknown photographer actively posed the girl to simulate a sex act: "Her crooked hand points at her genitalia. She is either deliberately covering her genitalia in a posed manner, or is posed to make it appear that she is about to touch herself there or masturbate." At oral argument, the Commonwealth wisely distanced itself from that suggestion.

[30]Notably, the literature suggests that "[p]edophiles may *prefer* 'innocent' pictures. . . . According to certain theorists, the stimulation derived from a picture can be inversely proportional to its overtly sexualized nature. It is often the very innocence — the sexual naiveté — of the child subject that is sexually stimulating." (Footnotes omitted.) Adler, Inverting the First Amendment, 149 U. Pa. L. Rev. 921, 944-945 (2001). An inquiry into whether the defendant in a child pornography case found the images lewd could thus potentially turn on factors diametrically opposed to those that support depriving the image of First Amendment protection.

viewed as sexually suggestive." *Ante* at 305. However, the applicable test is whether the photograph sexualizes its portrayal of the girl's nudity in an objective and sufficiently material way to warrant a criminal conviction merely for possessing it. While the photograph need not be "obscene" (at least in the sense that that word is used in the context of adult pornography), it still has to be so noxious that one commits a felony merely by holding the photograph in one's hand. This photograph does not come even close to meeting that test. Indeed, it is not clear how any photograph that is at most subtly sexually suggestive could ever be deemed "lewd" beyond a reasonable doubt.

This conclusion does not undercut the purposes that G. L. c. 272, § 29C, was enacted to serve. The photograph cannot fairly be described as a permanent record of the girl being subjected to sexual abuse or exploitation; rather, it is a permanent record of her playing in the sand.[31] Of course, this is not to say that the girl expected or desired that her photograph would be taken that day on the beach, and needless to say, she might well be mortified if she knew that this photograph were available on the Internet. But the question before us is not whether whoever took the photograph (or placed it on the photograph-sharing Web site) broke the law in whatever jurisdiction this occurred. Nor is it whether the girl might have other remedies to address the invasion of her privacy. The question instead is whether the harm inflicted by the continued existence of the photograph is so substantial as to support treating its mere possession as a crime.

7. *The majority's methodology.* Some additional comment is warranted as to the methodology through which the majority determined the evidence sufficient. After having preliminarily determined that the photograph is "lewd," the majority goes on to examine whether "other evidence or characteristics of the photograph indicate that it is not lewd." *Ante* at 306. Specifi-

---

[31]The majority acknowledges that the taking of the photograph did not amount to any sexual abuse of the girl, but it declares that her "developing sexuality is being exploited by the taking and sharing of this revealing snapshot of her breasts and pubic area." *Ante* at 307. Although the majority does not explain what it means by the term "exploited" or how that standard is met here, it appears that the majority rests on the fact that the girl has been shown "at a vulnerable stage in her sexual and emotional development [and that] her privacy is being invaded." *Ibid.* But, as already discussed, mere nudity, even of a developing child, is not enough to make an image "lewd."

cally, the majority examines whether the photograph "constitutes a form of artistic, educational, or other personal exhibition or expression protected by the First Amendment."[32] *Ibid.* Finding such content lacking, the majority suggests that First Amendment values have been protected.

The majority's mode of analysis is problematic. Whether an image has artistic or other social value is irrelevant to the question whether it may constitutionally be proscribed as "child pornography."[33] If a photograph truly constitutes a "lewd exhibition" of a naked child, then it thereby falls outside First Amendment protection, and no amount of redeeming social content can protect it. *New York* v. *Ferber*, 458 U.S. at 773. *Id.* at 774-775 (O'Connor, J., concurring). This makes sense. If a visual image involves a child's having been subjected to sexual abuse or exploitation, then whether there might be artistic or scientific value in the image is beside the point. *Id.* at 761, quoting from Memorandum of Assemblyman Lasher in support of N.Y. Penal Law, Art. 263, § 263.15 ("It is irrelevant to the child [who has been abused] whether or not the material . . . has a literary, artistic, political or social value").[34]

By the same token, a judicial determination that a work *lacks* any redeeming value cannot justify a less rigorous inquiry into whether that work qualifies as child pornography. There is no sliding scale upon which a work deemed less valuable or artistic

---

[32]The majority engages in this analysis even while recognizing that a photograph may still be lewd even if it has social value, and may still be subject to First Amendment protection even if it does not. *Ante* at 306.

[33]A work's literary, artistic, political, or scientific value is, of course, relevant to determining whether that work is obscene. See *Miller* v. *California*, 413 U.S. 15, 24 (1973). The Commonwealth has never suggested that the photograph at issue here is obscene, nor could it.

[34]If the photograph here is swept within the statute's prohibitions, then it is difficult to see how other nonsexual depictions of naked adolescents that society might not want to ban (such as those in medical textbooks) would not be swept in as well. When pressed on this point at oral argument, the Commonwealth responded simply that it would use its enforcement discretion not to prosecute cases involving such materials (even if they were used by a pedophile for sexual excitement). "But the First Amendment protects against the Government; it does not leave us at the mercy of noblesse oblige." *United States* v. *Stevens*, 130 S. Ct. at 1591. A statute incorporating such a broad interpretation of "lewdness" would be intolerable, even if "the Government promised to use it responsibly." *Ibid.*

is therefore more likely to be lewd than a more valuable work containing the same objective depiction.[35] Judges are in any event ill-equipped to make such a determination. See, e.g., *Bleistein* v. *Donaldson Lithographing Co.*, 188 U.S. 239, 251 (1903) ("It would be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of pictorial illustrations, outside of the narrowest and most obvious limits"); *Pope* v. *Illinois*, 481 U.S. 497, 505 (1987) (Scalia, J., concurring) ("For the law courts to decide 'What is Beauty' is a novelty even by today's standards").

Rather than judging the value of the work at issue, it is the role of the courts to guard the boundaries of free expression, permitting speech to be suppressed based upon its content only if it falls within one of the "well-defined and narrowly limited classes" that lie outside the First Amendment's protection. *United States* v. *Stevens*, 130 S. Ct. at 1584, quoting from *Chaplinsky* v. *New Hampshire*, 315 U.S. 568, 571 (1942). Speech that fits comfortably within accepted social norms requires little judicial enforcement of First Amendment protections. Instead, the need for judicial intervention is implicated where the expression the government is challenging is unpopular or offensive.

---

[35]*Bean*, 435 Mass. 708, is not to the contrary. That was not a possession case. Instead, the defendant there (a photographer) was charged with posing a minor in the nude, and the Commonwealth was required to prove (unlike here) that the defendant was acting with "lascivious intent." *Id.* at 709. Compare G. L. c. 272, § 29A, with G. L. c. 272, § 29C. Thus, whether the photographer was pursuing artistic aims was directly relevant to the court's analysis. Significantly, a photographer may be convicted under § 29A for posing a minor in a state of nudity even if the photographs produced are indisputably *not* child pornography, and would therefore be legal to possess. *Oakes II*, 407 Mass. at 97-98 & n.8. It is also undoubtedly the case that a photographer, though not acting with lascivious intent (and thus not subject to prosecution under § 29A), could nevertheless produce photographs which would fall outside the First Amendment's protection. In addition, while the defendant here does not claim the photograph has artistic value (and none readily appears to my eye), I note that any distinction suggested by *Bean* between art photographs and "mere snapshots," 435 Mass. at 715, may be a difficult one to draw. In recent years, the art world has seen a burgeoning appreciation for the artistic value of snapshots and other "found art" that freezes random moments in time. See, for example, "The Art of the American Snapshot, 1888-1978," an exhibition of photographs selected from the collection of snapshot collector Robert E. Jackson, which were displayed at the National Gallery of Art in Washington, D.C., from October 7 to December 31, 2007, and memorialized in a bound volume of the same name.

"Indeed, 'the point of all speech protection . . . is to shield just those choices of content that in someone's eyes are misguided, or even hurtful.' " *Snyder* v. *Phelps,* 131 S. Ct. 1207, 1219 (2011), quoting from *Hurley* v. *Irish-American Gay, Lesbian & Bisexual Group of Boston, Inc.,* 515 U.S. 557, 574 (1995). While judges have an important role in making an independent review whether the expression at issue has crossed the boundary into unprotected speech, if that boundary has not been crossed, then judges have no proper role in determining whether particular speech merits protection.

The need for an independent judicial role is particularly acute in cases where the expression at issue involves a photograph of a naked child. Even where the child is not engaged in any of the sex acts specifically prohibited by the statute, and even though "mere nudity" is not (indeed, cannot be) prohibited by the statute, many members of the public would no doubt find any portrayal of a child's nakedness offensive (particularly where, as here, it depicts an adolescent's budding sexuality).[36] That becomes increasingly likely to the extent one considers the possessor's motives for acquiring such a photograph. Given that the defendant had no other obvious reason for downloading the photograph, the jury readily could have inferred that he derived sexual excitement from it.[37] Indeed, defense counsel came close to conceding the point when she acknowledged to the jury that they probably found her client's conduct "weird" and that it "probably makes you uncomfortable." An adult's sexual attraction toward young children is highly disturbing. Needless to say, when an individual actively pursues such urges to the point of

---

[36]See *Osborne* v. *Ohio,* 495 U.S. at 132 (Brennan, J., dissenting) ("Many would characterize a photograph of a seductive fashion model or alluringly posed adolescent on a topless European beach as 'lewd,' although such pictures indisputably enjoy constitutional protection").

[37]Although the prosecutor acknowledged at sidebar that whether the defendant himself found the photograph lewd was irrelevant, she nevertheless urged the jury to focus on the image of a middle-aged man "trolling" photographs of naked children on a Russian Web site until he found the one he wanted. We recognize that the judge instructed the jury that what the defendant "was going to do with the material is not for you to consider in this case," and we ordinarily presume that the jury followed a judge's instructions. In the context of this case, such an instruction has as realistic a chance of successfully getting the jury to put the defendant's thoughts out of their minds as would a plea to "stop thinking about the elephant in the room."

crossing the boundary into objectively criminal behavior that exploits children, such conduct can and should warrant severe criminal sanctions. However, where the individual has not crossed that line, there is a risk that a jury will nevertheless seek to punish him or her based on the revulsion they feel for what is inside his or her head. Cf. *Stanley* v. *Georgia*, 394 U.S. 557, 566 (1969) (recognizing that the government "cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts"). In this area perhaps more than in any other, "a jury is 'unlikely to be neutral with respect to the content of [the] speech,' posing 'a real danger of becoming an instrument for the suppression of . . . unpleasant' expression." *Snyder* v. *Phelps*, 131 S. Ct. at 1219, quoting from *Bose Corp.* v. *Consumers Union of U.S., Inc.*, 466 U.S. 485, 510 (1984). It is the responsibility of judges to try to ensure that this does not happen.

C. *Jury instructions.* Even if the evidence had been sufficient, the jury instructions were wholly inadequate. Notably, the principal theory of lewdness that the Commonwealth presented to the jury was that a photograph that shows an adolescent girl in a state of nudity is for that reason lewd. Specifically, the prosecutor urged the jurors to ignore "[w]hat is acceptable or appropriate somewhere else," and to focus their attention on the question: "Doesn't a child reach an age where her nakedness is private?" According to the prosecutor, the girl "is too old to be depicted in a picture with her developing breasts and her pubic area on display," and "given the age of this girl and her physical development and the nakedness of her breasts and her pubic area in this picture, isn't that what makes this lewd?" In this manner, the Commonwealth urged the jury to convict the defendant on a theory that is untenable on both statutory and constitutional grounds.

The defendant objected to the prosecutor's closing and specifically requested a curative instruction that nudity alone cannot make a photograph "lewd." When the judge declined to provide such an instruction, the defendant specifically objected to its absence. Because the principle that mere nudity is insufficient is well established by the case law, the requested instruction should have been given.[38] Regardless of whether the defendant in the

---

[38]The majority acknowledges that this is the state of the law but provides no convincing explanation for why such an instruction was not warranted.

end waived the issue (through his counsel's stating that she was "content" with the instructions), the absence of adequate instruction on lewdness created a substantial risk of a miscarriage of justice. Indeed, the import of the inadequate instruction is self-evident given that the Commonwealth urged the jury to conclude that mere nudity of an adolescent girl was by itself sufficient. In my view, it is not only possible, but likely that adequate instruction would have made a difference here.[39] And that leaves aside the separate problem, recognized by the majority, that "the judge could have stated more clearly that the defendant's subjective reaction to the photograph was not relevant to the jury's determination of the lewdness of the photograph itself." *Ante* at 309.

D. *Introduction of the other photographs.* Finally, while I agree with the majority that the judge did not abuse her discretion in allowing in evidence the other images that the defendant viewed, I arrive at that conclusion by a different route. There is little merit to the Commonwealth's protests about its need to use the other photographs, and its entitlement to do so. That is because the Commonwealth's evidence that the defendant knowingly possessed the photograph was not only strong, it was uncontested.[40] At the same time, the other photographs are not, in the end, significantly prejudicial. In fact, these photographs had some exculpatory value that lay unexploited. Most of them simply reinforced the "day at the beach" quality of the images the defendant was viewing.[41] While a few of the photographs showed other young girls in undeniably lewd (but clothed) poses

---

[39]This conclusion is supported by the different outcomes of the two trials. The only significant difference in the presentation of the case at the two trials had to do with the jury instructions. Although the judge did not provide the defendant his requested "mere nudity is not enough" instruction in the first trial either, she did instruct the first jury that whether the defendant's conduct was appropriate "has no place here," because "the fact that it's inappropriate does not alone or necessarily mean it violates the statute."

[40]Although there was no stipulation to that effect, defense counsel informed the jury during her opening statement that the defendant was not contesting possession, and she stuck by that statement throughout the trial (as she did in the first trial).

[41]Most of the photographs are other candid snapshots of people at beaches, some walking along or lying on the sand, some in the water. The people, most but not all of whom are naked, include adults, children, and people of indeterminate age (either because their backs are to the camera or the photograph

(see note 10, *supra*), those photographs could have been used to underscore the absence of lewdness in the one photograph for which the defendant was charged.[42]

*Conclusion.* In my view, the photograph of a naked girl playing on a beach does not rise to the level of a "lewd exhibition." Therefore, even if the indictment adequately charged the defendant with conduct amounting to a crime, the Commonwealth's proof of such conduct failed as a matter of law.

---

is too blurry). In the setting of a nude beach, it is hardly "unnatural" for a child to be nude, regardless of whether the child passes the majority's new "Coppertone-age" test. At least one of the additional beach photographs shows the same girl depicted in the photograph for which the defendant was charged. This second photograph reinforces the candid, snapshot quality of the first. A second naked child, a toddler, has wandered into the camera's field of view, and a portion of a leg of someone lying in the sand can also be seen. To the extent that the majority suggests that the girl is trying to shield her breasts from the photographer in that second photograph, this is belied by the positioning of her forearm and the fact that her fingers are spread apart.

[42]I also note that the defendant did not move to bifurcate resolution of the question whether the photograph was lewd from that of whether he knowingly possessed it. Having the jury initially consider whether the photograph was lewd would have presented an obvious means of allowing that issue to be tried without any extraneous considerations presented to the jury.