UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael ARVIN, Defendant–Appellant.

No. 87–1220.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 12, 1988.
Decided April 12, 1990.

Charles R. Garry, San Francisco, Cal., for defendant-appellant.

Sanford Svetcov, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before FLETCHER, BEEZER and O'SCANNLAIN, Circuit Judges.

FLETCHER, Circuit Judge:

Michael Arvin appeals his conviction and sentence under 18 U.S.C. § 2252(a)(1) for mailing three photographs of minor females engaged in sexually explicit conduct. His appeal presents several issues revolving around the meaning of the statutory term "lascivious." We must decide whether this term incorporates a standard of obscenity, whether expert testimony on the issue of "lasciviousness" should have been allowed, and whether the district court correctly instructed the jury on the definition of this term. Arvin also raises issues concerning the denial of his motion to dismiss

the indictment, the severity of his sentence, and prosecutorial misconduct. We affirm.

## FACTS

Arvin stipulated at trial that he knowingly mailed three photocopied photographs of nude female children to undercover officer Jeffrey Miller. Arvin mailed the pictures in response to an advertisement seeking a pedophile correspondent placed by Miller in *Swinger's Digest*. The photocopies were of pictures he had purchased several years earlier. Arvin was not the photographer, nor did he seek financial compensation from Miller. All three pictures show apparently prepubescent girls completely nude, facing the camera with their legs apart so as to expose their genitals. The pictures were captioned "Lolita–Sex," "Skoleborn–School Children," and "Little Girls F—k too."

A two-count indictment[1] was returned on August 22, 1986. Arvin's motion to dismiss the indictment was denied on February 6, 1987. The government's motion *in limine* to exclude expert witnesses on the question of whether the pictures were "lascivious" was granted on March 13, 1987. Jury trial began on April 6, 1987. Because Arvin stipulated that he knowingly mailed the photocopies, the prosecution's case consisted of little more than introducing the pictures into evidence. Arvin raised no affirmative defenses. The jury found Arvin guilty on both counts, and the court sentenced him to three years imprisonment, to be followed by three years probation.

18 U.S.C. § 2252(a) punishes:

Any person who ... knowingly ... mails any visual depiction, if—

(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(B) such visual depiction is of such conduct ...

18 U.S.C. § 2256(1) defines a "minor" as "any person under the age of eighteen years." § 2256(2) defines "sexually explic-

it conduct" to include various specific sexual activities not depicted in any of Arvin's pictures, as well as the "lascivious exhibition of the genitals or pubic area of any person." "Lascivious" is not defined.

## ANALYSIS

### I. *Background*

The constitutional limitations on the regulation of child pornography were first spelled out in *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). *Ferber* held that pornographic depictions of children lack First Amendment protection even if the depictions are not "obscene." Unlike obscenity laws, which aim to protect "the sensibilities of unwilling recipients," *Miller v. California*, 413 U.S. 15, 18–19, 93 S.Ct. 2607, 2611–12, 37 L.Ed.2d 419 (1973), child pornography laws aim to protect the children themselves from sexual exploitation and abuse. *Ferber*, 458 U.S. at 757, 102 S.Ct. at 3354. Therefore, "community standards," "redeeming value," and "prurient interest" tests are not relevant in determining what constitutes child pornography:

> [T]he question under the *Miller* test of whether a work, taken as a whole, appeals to the prurient interest of the average person bears no connection to the issue of whether a child has been physically or psychologically harmed in the production of the work. Similarly, a sexually explicit depiction need not be "patently offensive" in order to have required the sexual exploitation of a child for its production.... "It is irrelevant to the child [who has been abused] whether or not the material ... has a literary, artistic, political or social value."
> ... It would be equally unrealistic to equate a community's toleration for sexually oriented material with the permissible scope of legislation aimed at protecting children from sexual exploitation.

*Ferber*, at 761 & n. 12, 102 S.Ct. at 3356–57 & n. 12 (citations omitted). *Ferber* recognizes a broad power in legislatures to pro-

---

1. Count I covered the picture received by Miller on April 26, 1986, Count II the two pictures received on May 6, 1986.

hibit nude depictions of minors as needed to prevent child abuse.

After the decision in *Ferber*, Congress amended the federal child pornography laws in several ways.[2] The mailing no longer must be for commercial purposes. The depictions need not be obscene. The age of majority was raised from 16 to 18. Most importantly for this case, Congress replaced the term "lewd" with "lascivious" in § 2256(2)(E), noting:

> "Lewd" has in the past been equated with "obscene"; this change is thus intended to make it clear that an exhibition of a child's genitals does not have to meet the obscenity standard to be unlawful.

Remarks of Senator Specter, 130 Cong.Rec. S3510, S3511, March 30, 1984, quoted in *United States v. Dost*, 636 F.Supp. 828, 831 (S.D.Cal.1986). The constitutionality of this change, as against a vagueness challenge, was upheld in *United States v. Wiegand*, 812 F.2d 1239, 1243 (9th Cir.) (affirming *Dost*), *cert. denied*, 484 U.S. 856, 108 S.Ct. 164, 98 L.Ed.2d 118 (1987); *see also United States v. Freeman*, 808 F.2d 1290, 1292 (8th Cir.), *cert. denied*, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 697 (1987); *United States v. Rubio*, 834 F.2d 442, 447–48 (5th Cir.1987).[3]

## II. *Arvin's Motion to Dismiss the Indictment*

■ Arvin argues that the district court erred in refusing to dismiss the indictment. This motion turned on the dis-

trict court's legal interpretation of the statute and therefore is reviewed *de novo*. *Cf. United States v. Smith*, 795 F.2d 841, 845 (9th Cir.1986), *cert. denied*, 481 U.S. 1032, 107 S.Ct. 1964, 95 L.Ed.2d 535 (1988). Arvin presents a two-pronged argument. First, he contends that since he had no commercial motivation, the statute could not constitutionally or by its terms apply to him. This argument lacks merit in light of the amendment to § 2252 eliminating the "commercial purpose" requirement, and in light of *Ferber*'s recognition of broad legislative authority to regulate child pornography as necessary to prevent child abuse. Nor does the defendant have to be engaged in distribution; even a mailing of photographs to a developer, for purely personal use, will suffice for conviction. *United States v. Smith*, 795 F.2d at 845–46.

■ Arvin's second argument is that the photos were not "lascivious" as a matter of law. We reject this characterization of the pictures. While it is arguable that the pictures are not, in fact, lascivious, the district court did not err in refusing to dismiss the indictment on this basis. The issue of lasciviousness was properly allowed to go to the jury.

## III. *Expert Testimony*

■ Arvin argues that he was deprived of a fair trial by not being allowed to present expert testimony on the issue of whether the pictures were lascivious. The admissibility or exclusion of expert testimo-

---

2. As originally enacted, 18 U.S.C. § 2252(a) provided in part:

> Any person who—
> (1) knowingly transports or ships in interstate or foreign commerce or mails, for the purpose of sale or distribution for sale, any obscene visual or print medium, if—
> (A) the producing of such visual or print medium involves the use of a minor engaging in sexually explicit conduct; and
> (B) such visual or print medium depicts such conduct; ...

18 U.S.C. § 2253(1) defined a minor as "any person under the age of sixteen years." § 2253(2)(E) included "lewd exhibition of the genitals or pubic area of any person" within the definition of "sexually explicit conduct." Protection of Children Against Sexual Exploitation Act, P.L. 95–225, 92 Stat. 7 (1977).

3. The court in *Wiegand* stated that " '[l]ascivious' is no different in its meaning than 'lewd,' a commonsensical term whose constitutionality was specifically upheld in *Miller v. California*, and in *Ferber*." 812 F.2d at 1243 (citations omitted). This language was intended only to demonstrate that the two terms are essentially interchangeable in ordinary usage. Although the above-quoted language in *Wiegand* is certainly subject to the interpretation that we were implicitly rejecting Congressional intent and mandating the continued use of the obscenity standard, such an interpretation is not required by the actual holding of *Wiegand*, which was only that the term "lascivious" is not unconstitutionally vague.

ny is within the discretion of the trial court, and is reversible only for abuse of discretion or manifest error. *United States v. Langford,* 802 F.2d 1176, 1179–80 (9th Cir. 1986) (although expert testimony concerning eyewitness identification is often useful, its exclusion is within the discretion of the trial court), *cert. denied,* 483 U.S. 1008, 107 S.Ct. 3235, 97 L.Ed.2d 740 (1987). The benchmark for exclusion is whether the proffered testimony would usurp the function of the jury. *Id.*

Arvin makes two arguments. First, he argues that the evidence should have been admitted under Fed.R.Evid. 702. Second, he contends that the evidence should have been admitted to avoid a violation of the First Amendment.

Rule 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The Rule by its own terms merely *allows* the use of expert testimony ("may testify"). "Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier." Advisory Committee Note to Rule 702; *see also United States v. Christophe,* 833 F.2d 1296, 1299 (9th Cir.1987) (whether jury will receive "appreciable help" from the expert testimony).

■ Arvin argues that experts would have appreciably assisted the jury here because (1) child pornography is "highly emotional and provocative," and juries are invariably "highly biased"; (2) there is a "lack of public understanding and knowledge of matters affecting sexual behavior"; and (3) the jury should be able to compare other nude photographs of children, with expert guidance. The experts would discuss "appropriate" places and poses where a child could be depicted nude without the depiction being lascivious.

We disagree. The expert testimony either would not have been directed at any legally relevant factors or would have impinged on the jury's function. According to Arvin's offer of proof, the experts would have testified that a photo is not lascivious unless the child is showing a willingness to engage in sexual conduct, actually engaging in sexual conduct, or demonstrating an erotic reaction. This is simply wrong, *see Dost,* 636 F.Supp. at 832, and its introduction would usurp the jury's function. They would have testified that there is a difference between "nudity" and "nakedness". That there is a difference seems unlikely but, in any event, is legally irrelevant to any issue in this case. They also would have testified that "nudity" is not the same as "sexual activity." One does not need an expert to attest to the truth of that proposition. These words to which Arvin would have experts testify are within common understanding. The jury does not need the help of experts.

They also would have testified that photos not unlike those mailed by Arvin are used for educational purposes. However, *Ferber* expressly holds that community tolerance for equivalent material is irrelevant; it also holds that scientific or other value will not necessarily save a photo from legitimate prohibition. 458 U.S. at 761 & n. 12, 102 S.Ct. at 3356 & n. 12. Finally, the experts would have testified that the fact that someone may be sexually aroused by the photos does not necessarily make them lascivious. That may be so, but the fact that the photos have that effect may nonetheless be relevant. *Wiegand* described a picture prohibited by the statute as one in which "a child's sex organs [are] displayed lasciviously—that is so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur." *Wiegand* at 1244. The statute reflects a legislative determination that it is a form of child abuse for a photographer to pose a child sexually for purposes of the photographer's sexual gratification, and that the abuse continues with dissemination of the photos for purposes of satisfying others. Thus, the apparent motive of the photographer and intended response of the viewer are relevant.

This circuit has held that "lascivious" is a "commonsensical term", *Wiegand* at 1243, and that whether a given photo is lascivious is a question of fact. *Id.* at 1244. There is a consensus among the courts that whether the item to be judged is lewd, lascivious, or obscene is a determination that lay persons can and should make. *See United States v. Thoma*, 726 F.2d 1191, 1200 (7th Cir.) *cert denied*, 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984); *United States v. Thomas*, 613 F.2d 787, 794 (10th Cir.) *cert. denied*, 449 U.S. 888, 101 S.Ct. 245, 66 L.Ed.2d 114 (1980); *United States v. Cutting*, 538 F.2d 835, 840 (9th Cir.1976) (en banc) ("female nudes so posed that a jury could quickly find that the sole purpose was to emphasize a lewd portrayal of the genitals."), *cert. denied*, 429 U.S. 1052, 97 S.Ct. 766, 50 L.Ed.2d 769 (1977); *United States v. Nemuras*, 567 F.Supp. 87, 90 (D.Md.1983), *aff'd*, 740 F.2d 286 (4th Cir.1984). Because the jury was fully capable of making its own determination on the issue of "lasciviousness," the district court did not abuse its discretion in excluding the expert testimony.

■ Arvin also argues that expert testimony about "community standards", "prurient interest", and "patent offensiveness" would have assisted the jury in avoiding a conviction in violation of the First Amendment. If to be lascivious, an exhibition must be obscene, this testimony would of course be relevant. However, under *Ferber*, child pornography can be prohibited even if not obscene. Accordingly, such testimony is irrelevant in this case.

**4.** "[T]he elements of the offense break down into the following:

Number one is a knowing mailing. Now, in this case that's admitted, so there's ... no necessity for you making a decision on that.

Second, a visual depiction. [T]he pictures in this case are obviously visual depictions.

Third, the use of a minor. You will have to decide that issue based upon your observation of the pictures themselves.

And finally, fourth element—and the one I think that you're going to have to wrestle with in making your decision, because I think it's the key to this case—is the lascivious exhibition of the genitals or pubic areas.

## IV. *Prosecutorial Misconduct*

Arvin argues that certain questions posed by the prosecutor amount to misconduct. Arvin moved for a mistrial on this ground below. The district court did not find deliberate misconduct, but issued a cautionary instruction to the jury. Control of counsel at trial is a matter primarily for the district court. *Cf. United States v. Guess*, 745 F.2d 1286, 1288 (9th Cir.1984) (closing arguments), *cert. denied*, 469 U.S. 1225, 105 S.Ct. 1219, 84 L.Ed.2d 360 (1985). The trial court had earlier specifically permitted the prosecution to inquire into the circumstances of the mailing until the questions would be deemed to violate Fed.R. Evid. 403. Even assuming that the questions were improper, which we do not believe to be the case, the district court gave a curative instruction which was sufficient to render any error harmless. *See, Greer v. Miller*, 483 U.S. 756, 765–66, 107 S.Ct. 3102, 3109, 97 L.Ed.2d 618 (1987).

## V. *The Propriety of the Jury Instruction*

■ Arvin argues that the trial court wrongly instructed the jury on the legal definition of "lascivious." Instructions on the elements of an offense and definitions of legal terms are reviewed *de novo*. *United States v. Stenberg*, 803 F.2d 422, 433 (9th Cir.1986). The instructions are to be viewed as a whole, in the context of the entire trial, to determine whether they were misleading or inadequate to guide the jury's determination. *United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir.1983).

The portions of the instruction relevant to this appeal are set out in the margin.[4]

[W]hen you see the photographs, it is obvious that they do involve the genitals and pubic area. So your decision—you must decide whether the exhibitions are lascivious, lascivious.

[T]he statute does not define ... what the word "lascivious" means. But some courts have considered the subject of what lascivious means. Even those courts have not given to us a precise definition of what that word means. They have generally held that the word lascivious is virtually interchangeable with the word "lewd."

And the courts have also given us a listing of factors which you, as the decision makers, can consider in deciding whether the pictures are lascivious.

The instruction provides a list of eight factors which the jury "can", "would have to", or "may" consider. The jury was instructed that the depiction "need not involve all of these factors," and "the weight or lack of weight which [the jury gives] to any one of those factors is for [it] to decide."

■ In formulating an instruction defining "sexually explicit conduct" under § 2256(2)(E), the court of course must instruct the jury that it must find that the pictures visually depict the minor's genitals or pubic area. This is a threshold element contained in the language of § 2256(2)(E) itself, distinct from the additional requirement that the depiction be "lascivious." In order to be lascivious, the exhibition must be pornographic, even if it need not be obscene. At the same time, it must be recognized that the type of sexuality encountered in pictures of children is different from that encountered in pictures of adults. This is because children are not necessarily mature enough to project sexuality consciously. Where children are photographed, the sexuality of the depictions often is imposed upon them by the attitude of the viewer or photographer. The motive of the photographer in taking the pictures therefore may be a factor which informs the meaning of "lascivious."

■ The distinction between a pornographic depiction and an innocent one is a distinction the jury should be able to make

from its own experience. How much instruction should be given beyond telling the jurors that they must find the statutory imperatives and must use their common sense to decide whether the pictures are lascivious is essentially up to the discretion of the judge. The judge in this case gave a long list of specific factors that had been present in other child pornography cases to guide the jurors' viewing. Each one could be relevant but, on the other hand, might not be relevant or significant in this particular case. The judge guarded against the jury's attaching undue significance to any particular factor by instructing that "the weight or lack of weight which you give to any one of those factors is for you to decide." Arvin would have us believe that this instruction allowed the jury to find "lasciviousness" from the mere presence of one factor only—for example nudity or suggestive captions on the pictures. We disagree. A reasonable juror could not have interpreted the instructions to allow a guilty verdict from the single fact that the subject was nude without more. The judge conveyed to the jury that "lascivious" was like "lewd" and that it was more than distasteful and more than bad taste. We conclude that the jury was properly instructed—the jurors were told about as well as any jurors could be what they should consider in making a determination as to whether the pictures were lascivious. Appellate courts review jury instructions

... I'm going to list for you eight factors which the courts have said that you would have to decide whether these photographs were lascivious—can consider in making that decision.
... [T]hese are the factors that you can consider in deciding whether the pictures involve the lascivious exhibition of the genitals or the pubic area:
Number one: whether the focal point of the pictures is on the child's genitals or pubic area.
Number two: whether the setting is sexually suggestive. For example, in a place or pose generally associated with a sexual activity.
Number three: whether the child is depicted in an unnatural pose, considering the age of the child.
Number four: whether the child was clothed or nude.
Number five: whether the pictures suggest sexual coyness or willingness to engage in sexual activity.

Number six: whether the pictures are intended or designed to elicit sexual response from the viewer.
Number seven: whether the picture portrays the child as a sexual object.
And number eight: [the] captions on the pictures.
[A] visual depiction need not involve all of those factors in order to be a lascivious exhibition of the genitals or pubic area, but those are the factors which you can consider. And the weight or lack of weight which you give to any one of those factors is for you to decide.
[T]hese pictures may not be found to be lascivious merely because you may not like them or because you may find them to be in bad taste."

**1392**

as a whole for meaning and clarity because that is how jurors view them. These instructions viewed as a whole, were proper instructions.

## CONCLUSION

We hold that a depiction of a minor need not be obscene to satisfy the definition of "sexually explicit conduct" under the "lascivious exhibition of the genitals or pubic area" prong of 18 U.S.C. § 2256(2). The district court did not err in refusing to dismiss the indictment and in refusing to grant a mistrial. Exclusion of expert testimony was not error. The jury instructions, read as a whole, properly informed the jury as to the meaning of "lascivious."

We affirm.