2026 IL App (1st) 240291-U

No. 1-24-0291

FIFTH DIVISION
June 26, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| People of the State of Illinois, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 2018 CR 14597 |
| | ) | |
| Dennis Rubio, | ) | The Honorable |
| | ) | Marc W. Martin, |
| Petitioner-Appellant. | ) | Judge Presiding. |

JUSTICE WILSON delivered the judgment of the court.
Justice Oden Johnson concurred in the judgment.
Presiding Justice Mitchell dissented.

**ORDER**

¶ 1    *Held*:  The judgment of the circuit court is reversed. *Pro se* postconviction petition stated the gist of a constitutional claim that appellate counsel was ineffective for failing to raise a sufficiency of the evidence challenge on direct appeal.

¶ 2                                    I. BACKGROUND

¶ 3    Petitioner-appellant, Dennis Rubio, was charged by indictment with two counts of creation of child pornography (count I and II) under section 11-20.1(a)(1) of the Criminal Code of 2012 (Code) (720 ILCS 5/11-20.1(a)(1) (West 2018)), one count of aggravated criminal sexual abuse (count III) under section 11-1.60 of the Code (720 ILCS 5/11-1.60 (West 2018)), and eight counts

of possession of child pornography (counts IV through XI) under section 11-20.1(a)(6) of the Code (720 ILCS 5/11-20.1(a)(6) (West 2018)).

¶ 4    At trial, the State's evidence revealed that the charges arose from an incident on September 19, 2018, at the Mount Prospect home of a married couple whose two children, including the five-year-old victim, were inside asleep. Rubio, a family friend, had been socializing in the couple's garage. Shortly after 11 p.m., Rubio went inside, ostensibly to use the bathroom. When the wife went to check on him minutes later, she found the bathroom dark and empty. She then discovered Rubio in the victim's bedroom, holding his cell phone in one hand while pulling down the sleeping child's pants and underwear with the other. The wife then confronted Rubio and, with her husband's assistance, secured the phone. Police arrived within minutes.

¶ 5    A forensic examination of Rubio's phone, conducted first by consent and then pursuant to a search warrant, revealed three videos created within approximately one minute of each other on the night of the incident. The first video depicted Rubio removing a blanket from the victim as she lay sleeping on her stomach, pushing her shirt up, and pulling down her sweatpants and underwear to expose her buttocks. Rubio then ran his fingers down the victim's exposed buttocks crack and touched her exposed buttocks twice more. This video formed the basis for count I (creation of child sexual abuse material), count III (aggravated criminal sexual abuse), and count IV (possession of child sexual abuse material). The second video showed only the bedding in the victim's room. The third video depicted Rubio again pulling down the victim's clothing followed by the wife's voice exclaiming, "[w]hat are you doing?" and "[w]hat are you f*** doing, dude?" The video then captured erratic movement as she attempted to apprehend Rubio. The second and third videos did not form the basis of any charged count but were admitted into evidence to establish the date and time of the incident and as additional evidence relevant to count

2

III. Additionally, Rubio's confiscated phone contained photographs taken earlier that month depicting a different minor, which formed the basis for counts VI through XI.

¶ 6 On the day of Rubio's scheduled trial, the State nol-prossed one count of creation of child pornography (count II) and one count of possession of child pornography (count V). Thereafter, Rubio waived his right to a jury trial. At the close of the State's evidence, Rubio moved for a directed finding on counts I and IV (creation and possession of child pornography), counts VI through XI (possession of child pornography), and count III (aggravated criminal sexual abuse). Relevantly, Rubio argued that the evidence was insufficient to sustain counts I and IV because the video did not depict the victim "engaged in" sexual conduct within the meaning of sections 11-20.1(a)(1)(i) and (a)(6) of the Code (720 ILCS 5/11-20.1(a)(1)(i), (a)(6) (West 2018)) because the video showed her asleep and unresponsive. The court denied the motion.

¶ 7 Following closing arguments, the court found Rubio guilty of count I (creation of child pornography), count III (aggravated criminal sexual abuse), count IV (possession of child pornography), and counts VI through XI (possession of child pornography). Thereafter, Rubio filed a combined motion to reconsider and for a new trial. As to counts I and IV, Rubio renewed his sufficiency challenge alleging that the victim was asleep and unresponsive in the video and therefore not "engaged in" sexual conduct as the statute required. The court denied the motion as to counts I, III, and IV. The court, however, granted the motion as to counts VI through XI, acquitting Rubio after the State failed to prove the age of the subjects in the photographs. The court sentenced Rubio to 15 years' imprisonment on count I, five years on count III, and five years on count IV, all consecutive, for an aggregate term of 25 years.

¶ 8 On direct appeal, Rubio's appointed counsel raised a single issue: whether Rubio's conviction on count IV should be vacated under the one-act, one-crime doctrine because his

conviction for creation of child pornography on count I arose from the same act, or, alternatively, because possession of child pornography is a lesser-included offense of creation. This Court rejected the argument and affirmed. *People v. Rubio*, 2023 IL App (1st) 211078. Notably, counsel did not raise a sufficiency of the evidence argument concerning the meaning of "engaged in" that Rubio had advanced at trial.

¶ 9      On August 2, 2023, Rubio filed a *pro se* petition for "Post Conviction Relief." Among other claims, Rubio alleged that appellate counsel was ineffective for failing to challenge the sufficiency of the evidence supporting his convictions for creation of child pornography (count I) and possession of child pornography (count IV). On October 13, 2023, the circuit court summarily dismissed the petition at the first stage as frivolous and patently without merit, finding that the appellate counsel was not ineffective because the omitted sufficiency of the evidence argument had "no reasonable chance of success on appeal." On February 14, 2024, this court granted Rubio's motion for leave to file a late notice of appeal. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 651(a) (eff. July 1, 2017) governing appeals from a final judgment in a postconviction proceeding.

¶ 10                        II. ANALYSIS

¶ 11     The sole issue on appeal is whether the circuit court erred in summarily dismissing Rubio's *pro se* petition for postconviction relief at the first stage, where he alleged that appellate counsel was constitutionally ineffective for failing to raise a sufficiency of the evidence challenge on direct appeal.

¶ 12     The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq* (West 2022)) provides a petitioner with a collateral means to challenge his or her conviction or sentence for violations of

federal or state constitutional rights. *People v. Jones*, 211 Ill. 2d 140, 143 (2004). The Act provides a three-stage process for adjudicating postconviction petitions. *Id.* at 144. At the first stage, the trial court must, independently and without considering any argument by the State, decide whether the petition is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2022). To survive dismissal at this initial stage, the postconviction petition "need only present the gist of a constitutional claim," which is "a low threshold" that requires the petition to contain only a limited amount of detail. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). In analyzing the petition, courts are to take the allegations of the petition as true, as well as liberally construe them. *Brown*, 236 Ill. 2d at 184. We review *de novo* the dismissal of a postconviction petition at the first stage. *People v. Coleman*, 183 Ill.2d 366, 389 (1998).

¶ 13 Claims of ineffective assistance of appellate counsel are governed by the same two-pronged standard for assessing claims of ineffective assistance of trial counsel set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504 (1984). Under *Strickland*, defense counsel was ineffective only if (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's error prejudiced the defendant. Failure to establish either prong is fatal to the claim. *Strickland*, 466 U.S. at 687. In the context of a first-stage postconviction claim, however, a petitioner need show only that he can arguably meet those two standards, *i.e.*, it is *arguable* that his counsel was deficient and it is *arguable* that the outcome of his case would have been different absent the deficient representation. *People v. Hodges*, 234 Ill. 2d 1, 17 (2009).

¶ 14 With respect to the prejudice prong, prejudice means "a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different." *People v. Peterson*, 2017 IL 120331, ¶ 79. A reasonable probability means a probability sufficient to

undermine confidence in the outcome of the proceeding. *Id*. If a court can resolve an ineffective assistance claim on the prejudice prong, it need not determine whether counsel's performance was objectively unreasonable. *People v. Salas*, 2011 IL App (1st) 091880, ¶ 91.

¶ 15    Moreover, unless the underlying issue is meritorious, a petitioner cannot establish prejudice from appellate counsel's failure to raise it on direct appeal. *People v. Childress*, 191 Ill. 2d 168, 175 (2000).  Thus, if Rubio's omitted sufficiency of the evidence challenge would not have been meritorious on direct appeal, he suffered no prejudice from appellate counsel's failure to raise it, and his ineffective assistance claim necessarily fails. At this first stage of post-conviction review, however, our task is to determine whether that omitted argument has at least arguable merit.

¶ 16    Rubio contends that the evidence was insufficient to sustain his convictions for creation and possession of child pornography (counts I & IV) because the State failed to prove beyond a reasonable doubt that the video depicted the victim "engaged in" sexual penetration or sexual conduct, as those terms are used in sections 11-20.1(a)(1)(i) and (a)(6) of the Code (720 ILCS 5/11-20.1(a)(1)(i), (a)(6) (West 2018)). He states that the video shows the victim asleep and unresponsive throughout the recording and that she therefore did not actively participate, or appear to participate, in any sexual conduct. He claims that appellate counsel should have raised this issue on direct appeal. In response, the State argues that appellate counsel was not ineffective for failing to raise the issue, where Rubio was proven guilty beyond a reasonable doubt. The State argues that the ordinary meaning of "engaged in" encompasses both active and passive participation and that, by manipulating the victim's body while she slept, Rubio caused her to participate in the sexual conduct depicted in the video, rendering the evidence sufficient to sustain both convictions.

¶ 17    When a criminal conviction is challenged based on the sufficiency of evidence, a reviewing court, considering all of the evidence in the light most favorable to the State, must determine

whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime. *People v. Murray*, 2019 IL 123289, ¶ 19. This standard " 'gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In reviewing the evidence, a reviewing court will not retry the defendant, nor substitute its judgment for that of the trier of fact unless the finding is against the manifest weight of the evidence. *Id*. A reviewing court will reverse a conviction where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *People v. Jones*, 2023 IL 127810, ¶ 28. Here, however, Rubio's sufficiency of the evidence argument involves an issue of statutory construction, an issue which this court reviews *de novo*. *People v. Gutman*, 2011 IL 110338, ¶ 12.

¶ 18    Section 11-20.1(a)(1)(i) of the Code provides, in pertinent part, that a person commits the offense of child pornography by filming or otherwise depicting "any child whom he or she knows or reasonably should know to be under the age of 18 *** where such child *** is: (i) actually or by simulation *engaged in* any act of sexual penetration or sexual conduct with any person[.]" (Emphasis added.) 720 ILCS 5/11-20.1(a)(1)(i) (West 2018). Section 11-20.1(a)(6) of the Code prohibits the knowing possession of any film depicting a child "*engaged in* any activity described in subparagraphs (i) through (vii) of paragraph (1) of this subsection[.]" (Emphasis Added.) 720 ILCS 5/11-20.1(a)(6) (West 2018). Thus, section 11-20.1(a)(6) of the Code does not independently describe what the film must depict. Instead, it makes possession unlawful when the film depicts one of the categories listed in Code section 11-20.1(a)(1). Here, count I charged Rubio with creating a depiction under section 11-20.1(a)(1)(i) of the Code, and count IV charged him with

possessing a film depicting that same category. Because both counts depend on whether the video depicted a child "engaged in" sexual penetration or sexual conduct, both turn on the meaning of that phrase.

¶ 19    The parties disagree as to what "engaged in" means as used in sections 11-20.1(a)(1)(i) and (a)(6) of the Code (720 ILCS 5/11-20.1(a)(1)(i), (a)(6) (West 2018)). The term "engaged in" is not defined in the Code, and no Illinois case has squarely interpreted it. Resolution of the meaning of "engaged in" is central to our determination of whether Rubio's sufficiency of the evidence argument had arguable merit so that appellate counsel was arguably ineffective for failing to raise it.

¶ 20    The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent, of which its language is the best indicator. *People v. Jurisec*, 199 Ill. 2d 108, 118 (2002). We consider the statute as a whole and give the words used by the drafters their plain and ordinary meaning, thereby ensuring that no part is rendered meaningless or superfluous. *People v. Hilton*, 2023 IL App (1st) 220843, ¶ 16. We further do not depart from the plain language of the statute by reading into it any unexpressed exceptions, limitations, or conditions, and we presume that the legislature did not intend an absurd, inconvenient, or unjust results. *Id*.

¶ 21    Applying ordinary principles of statutory construction, we presume the legislature intended the phrase to carry its ordinary and commonly understood meaning, which we may ascertain by consulting the dictionary. *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 88 (2009). Merriam-Webster defines "engage in" in two senses: (1) "to do (something)"; and (2) "to cause (someone) to take part in (something)." *Engage in*, Merriam-Webster Online, https://www.merriam-webster.com/dictionary/engage%20in (last visited June 8, 2026). Those definitions reflect two possible meanings: an active sense, in which the subject performs the act, or a causative sense, in

which the subject causes another to take part in it. Rubio relies on the phrase's active, participatory meaning. At this first stage, that reading is at least arguably in his favor.

¶ 22     On its face, section 11-20.1(a)(1) of the Code generally criminalizes the creation of certain visual depictions, but only when the depiction falls within one of the seven categories listed in subparagraphs (i) through (vii). 720 ILCS 5/11-20.1(a)(1), (a)(1)(i)-(vii) (West 2018). The categories are introduced by the common clause "where such child *** is," which orients the section around the child's depicted state or activity. *Id*. Rubio's charged provision, section 11-20.1(a)(1)(i) of the Code, prohibits depictions "where such child *** is *** actually or by simulation engaged in any act of sexual penetration or sexual conduct with any person[.]" *Id*. § 11-20.1(a)(1)(i).  Read in that context, it is at least arguable that "engaged in" describes what the child is depicted as doing or appearing to do—not what another person is shown doing to the child.

¶ 23     The State's interpretation adopts neither ordinary meaning of "engaged in"; it instead creates a blended meaning under which section 11-20.1(a)(1)(i) of the Code reaches a child who is either "doing" the sexual act or "being caused to take part" in it. But that is not how the phrase is ordinarily used. The alternative dictionary definition—"to cause (someone) to take part in"—is written in the active voice and presupposes two actors: a person who causes, and a person who is caused. It describes what a subject does to someone else (*e.g.*, "she engaged him in conversation"). Section (a)(1)(i) of the Code is not structured that way. It speaks of the child—"where such child *** is"—as the subject who is "engaged in" an act of sexual penetration or sexual conduct. 720 ILCS 5/11-20.1(a)(1)(i) (West 2018). In that formulation, the child is depicted as performing the conduct, not as being engaged by another.

¶ 24     The purpose of section 11-20.1 of the Code is to prevent the sexual abuse and exploitation of children. *People v. Syckle*, 2019 IL App (1st) 181410, ¶ 16. To that end, it broadly prohibits the

creation, possession, dissemination, and related use of child pornography. See 720 ILCS 5/11-20.1 *et seq.* (West 2018). Section 11-20.1(a)(1) of the Code uses different language to describe seven different categories of prohibited depictions. 720 ILCS 5/11-20.1(a)(1)(i)-(vii) (West 2018). Some subcategories refer to a child being "engaged in" specified sexual conduct. *Id.* § 11-20.1(a)(1)(i)-(iii), (v). Others use language directed to passive depictions, including where the child is "portrayed as being the object of" lewd touching or is "portrayed or depicted as bound, fettered, or subject to" abuse. *Id.* § 11-20.1(a)(1)(iv), (vi).

¶ 25   A closer look at section 11-20.1(a)(1)(iv) of the Code helps illustrate the point. It applies when the created image has the child "*portrayed as being the object of,* or *otherwise engaged in*," lewd fondling, touching, or caressing. *Id.* § 11-20.1(a)(1)(iv) (Emphases added.) The two phrases within the provision serve different functions. "[P]ortrayed as being the object of" covers the child as the passive recipient of the touching. "[O]therwise engaged in" covers the child as participating in it. If "engaged in" already included a child who is merely acted upon, then the phrase "portrayed as being the object of" would add little, if anything. We avoid readings that render statutory language superfluous. *Hilton*, 2023 IL App (1st) 220843, ¶ 16. The legislature did not include comparable "object of" language in subsection 11-20.1(a)(1)(i), and we may not read it in. See *In re K.C.*, 186 Ill. 2d 542, 549-50 (1999) (refusing to imply language the legislature omitted where doing so would render comparable language in another provision meaningless surplusage).

¶ 26   Nor does section 11-20.1(a)(1)(i)'s phrase "actually or by simulation" undermine the arguable merit of Rubio's claim. That phrase speaks only to the manner of the depictions—it extends the statute's reach to staged or imitated depictions, not just depictions of actual sexual conduct. See *Actually*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/actually (last visited June 8, 2026) ("in act or in fact : really"); see also

*Simulate*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/simulate (last visited June 8, 2026) ("to give or assume the appearance or effect of often with the intent to deceive: imitate"); *People v. McKown*, 2022 IL 127683, ¶ 38 (observing, in discussing the term "simulated," that the portrayal must be explicit enough to cause a reasonable viewer to believe the actors engaged in the conduct on camera). But whether the conduct depicted is real or staged, the depiction must still show the child as "engaged in" the act. In other words, "actually or by simulation" refers to whether the sexual conduct in the depiction is real or appears to be real; it does not decide the separate question of whether the child shown is taking part in, or appearing to take part in, that conduct. Here, the record establishes that Rubio acted upon a sleeping, unresponsive victim. Given those facts and the plausibility of Rubio's statutory construction argument, he has an arguable basis to contend that the evidence was insufficient to prove that the video depicted the victim either actually participating in sexual conduct or, by simulation, appearing to participate in it.

¶ 27    The State cites several cases in support of its broader reading, but none requires rejection of Rubio's claim at the first stage. The State first relies on *People v. Lamborn*, 185 Ill. 2d 585, 597 (1999), where the supreme court considered whether photographs depicting children in varying states of undress constituted lewd exhibitions under section 11-20.1(a)(1)(vii) of the Code. *Id*. at 594-97. *Lamborn* is of limited assistance here because it did not construe the phrase "engaged in" in section 11-20.1(a)(1)(i) of the Code. It addressed whether the photographs were lewd under section 11-20.1(a)(1)(vii) which focused on "the intended effect on the viewer" rather than on whether the child was depicted as participating in a specific sexual act. *Id*. at 594. That is a remarkably different question than the one before us.

11

¶ 28    The State also relies on *United States v. Levy*, 594 F. Supp. 2d 427 (S.D.N.Y. 2009) for persuasive authority. *Levy* interpreted 18 U.S.C. § 2251(a), a federal production statute that punishes anyone who "employs, uses, persuades, induces, entices, or coerces" a minor to "engage in" sexually explicit conduct for the purpose of producing a visual depiction. *Id*. There, the defendant photographed a sleeping five-year-old while molesting her, and the court concluded that a sleeping child could "engage in" sexually explicit conduct where another person used the child to create that conduct. *Levy*, 594 F. Supp. 2d at 430-31, 443.

¶ 29    *Levy* supports the State's general proposition that a child's unconsciousness does not, by itself, place a depiction beyond the reach of a child-exploitation statute. But *Levy* construed a markedly different statutory scheme, and its reasoning does not provide the sufficient guidance necessary to aid our statutory construction issue here. The key distinction is that Section 2251(a) focuses on the defendant's use of a minor to produce a visual depiction. 18 U.S.C. § 2251(a). It does not define the prohibited image through a set of separate depiction categories comparable to section 11-20.1(a)(1)(i) through (vii) of the Code. Illinois addresses the defendant's role in causing or procuring a child's appearance in a prohibited depiction separately in section 11-20.1(a)(4), which applies where a defendant "solicits, uses, persuades, induces, entices, or coerces any child *** to appear in any *** depiction *** in which the child *** is or will be depicted *** in any act, pose or setting described in subparagraphs (i) through (vii)." 720 ILCS 5/11-20.1(a)(4) (West 2018). Thus, unlike section 2251(a), the Illinois statute separates the image-definition inquiry in section 11-20.1(a)(1) from the procurement inquiry in section 11-20.1(a)(4). Rubio, however, was charged with creation under section 11-20.1(a)(1)(i) and possession under section 11-20.1(a)(6), not procurement under section 11-20.1(a)(4). *Levy* therefore does not answer whether the charged

Illinois provision required the State to prove that the child was depicted as "engaged in" sexual penetration or sexual conduct.

¶ 30    Accordingly, the wording and structure of the statute give Rubio a plausible reading of sections 11-20.1(a)(1)(i) and (a)(6) of the Code. In context, "engaged in" can reasonably be understood to require that the child be shown participating, or at least appearing to participate, in sexual penetration or sexual conduct.

¶ 31    Applied here, the record establishes that the victim was asleep and unresponsive while Rubio, filming, performed acts of "sexual conduct" upon her body. On those facts, Rubio has stated the gist of a constitutional claim that the video does not depict the victim actually participating in sexual conduct or, even by simulation, appearing to do so. Therefore, the evidence was arguably insufficient to convict him under counts I and IV and, as such, Rubio was arguably prejudiced when appellate counsel failed to raise the issue on direct appeal.

¶ 32    We emphasize the limited nature of our holding. The controlling question at this stage is narrow: whether it is arguable that (1) counsel's performance fell below an objective standard of reasonableness, and (2) counsel's error prejudiced the defendant. *Hodges*, 234 Ill. 2d at 17. We therefore do not decide what "engaged in" means, whether Rubio's reading is necessarily the better one, or whether his statutory construction argument will ultimately prevail—only whether his reading is arguable.

¶ 33    Consistent with that limited inquiry, we do not hold that a child victim's sleep, unconsciousness, or passivity necessarily places a depiction outside the reach of section 11-20.1 of the Code. We hold only that the meaning of "engaged in" is unsettled and that Rubio's reading of it has an arguable basis in the statutory text. The phrase is undefined, and no Illinois court has construed it. The statute, moreover, uses different language across its subparagraphs: it describes

some children as "engaged in" conduct (720 ILCS 5/11-20.1(a)(1)(i) (West 2018)), and others as "portrayed as being the object of" lewd conduct (*id.* § 11-20.1(a)(1)(iv)); as "portrayed or depicted as bound" (*id.* § 11-20.1(a)(1)(vi)); or as "depicted or portrayed in any pose, posture, or setting involving a lewd exhibition" of specified body parts (*id.* § 11-20.1(a)(1)(vii)). If "engaged in" necessarily included a child who is merely the passive recipient of another person's conduct, it is not clear what work those separate formulations would perform. See *Hilton*, 2023 IL App (1st) 220843, ¶ 16 (courts construe a statute so that no provision is rendered superfluous). We do not resolve that question now. It is enough to note that the statutory text and structure leave the meaning of "engaged in" open, which gives Rubio's sufficiency challenge an arguable basis in law. We therefore leave the ultimate construction for later proceedings.

¶ 34    We also need not decide at the first stage of this postconviction proceeding whether the conduct at issue would otherwise escape punishment and thereby lead to an absurd result. As addressed above, section 11-20.1(a)(1)(iv) of the Code more likely covers the type of conduct alleged here. That provision applies where a person films or otherwise depicts "any child whom he or she knows or reasonably should know to be under the age of 18 *** where such child *** is *** actually or by simulation portrayed as being the object of, or otherwise engaged in, any act of lewd fondling, touching, or caressing involving another person[.]" 720 ILCS 5/11-20.1(a)(1)(iv) (West 2018).

¶ 35    The same standard governs counsel's omission. We are mindful that appellate counsel need not raise every conceivable issue. *People v. English*, 2013 IL 112890, ¶ 34. But appellate counsel must still exercise professional judgment in selecting among potential claims of error. *Id.* ¶ 33. The issue omitted here did not depend on a future change in the law and was firmly grounded in the record. It was a sufficiency challenge that trial counsel had already preserved, first in the

motion for a directed finding at the close of the State's evidence and again in the posttrial motion to reconsider, arguing that the video depicted the victim asleep and unresponsive and therefore not "engaged in" sexual conduct as the statute requires. The argument rested on the text of the charged provision and remained available on direct appeal.

¶ 36 Nor would raising that argument have required counsel to advance a strained or unprecedented interpretation. That the precise question might be one of first impression does not, by itself, place an otherwise text-based claim beyond the reach of competent appellate counsel. See *People v. Mack*, 167 Ill. 2d 525, 532-33 (1995) (rejecting the contention that counsel acted reasonably in omitting an issue simply because it presented a matter of first impression with no directly applicable authority). To the extent the ordinary meaning of "engaged in" requires the image to depict the minor, whether awake, asleep, or unconscious, and not merely the defendant, as the person "actually or by simulation engaged in" sexual penetration or sexual conduct, that reading follows from the text of the charged provision itself.

¶ 37 At the first stage, we ask only whether it is arguable that appellate counsel performed deficiently by failing to raise the preserved sufficiency challenge and arguable that, had counsel raised it, there is a reasonable probability the appeal would have been successful. *People v. Petrenko*, 237 Ill. 2d 490, 497 (2010). On this record, both are arguable. To conclude otherwise, we would have to hold that the broader reading is correct, which would decide the merits of the petition at the first stage.

¶ 38 The federal authority cited by the State does not compel a different result at the first stage. The State cites several federal decisions for the proposition that a child-victim need not be actively engaged in the sexual conduct depicted. *See*, *e.g.*, *United States v. Lohse*, 797 F.3d 515, 521 (8th Cir. 2015) (court rejected the argument that the federal creation of child pornography statute

required either active participation by the minor or active sexual conduct to an unconscious minor by an adult defendant); *United States v. Finley*, 726 F. 3d 483, 495 (3d Cir. 2013) ("District Court did not err by instructing the jury that a sleeping child can 'engaged in' sexually explicit conduct" and that children are "considerably more vulnerable" in the context of child pornography offenses); *United States v. Arvin*, 900 F.2d 1385, 1391 (9th Cir. 1990) (requiring active engagement would be unreasonable "because children are not necessarily mature enough to project sexuality consciously."). Like *Lamborn* and *Levy*, those decisions do not construe the language at issue here in Code section 11-20.1(a)(1)(i). They therefore provide limited guidance in interpreting the Illinois statute.

¶ 39     For instance, *Finley*, like *Levy*, also interpreted 2251(a). The *Finley* court reasoned that Congress's use of broad procurement verbs—"employs, uses, persuades, induces, entices, or coerces"—particularly "uses," indicates that a minor's active or conscious participation is not essential to a conviction under that provision. *Id*. A perpetrator can "use" a minor to engage in sexually explicit conduct without the minor's awareness. *Id*. That reasoning is consistent with section 2251(a)'s focus on the defendant's procurement conduct. But as explained above, section 2251(a) is a production statute that focuses on the defendant's conduct in procuring the child's participation—it is not an image-definition provision like section 11-20.1(a)(1)(i)-(vii). The Illinois analog to section 2251(a) is section 11-20.1(a)(4) of the Code, not section 11-20.1(a)(1)(i). However, Rubio was not charged under section 11-20.1(a)(4) of the Code. The interpretive flexibility the federal courts have recognized in construing section 2251(a), therefore, cannot override the specific language the Illinois legislature chose to include in section 11-20.1(a)(1)(i) of the Code, the provision actually at issue. See *Illinois State Treasurer v. Illinois Workers' Compensation Commission*, 2015 IL 117418, ¶ 28 (when the legislature uses certain language in

16

one part of a statute and different language in another, courts presume different meanings were intended).

¶ 40    Moreover, federal authority is not uniform on the scope of section 2251(a) either. The Seventh Circuit has read the statute to require that the image depict the minor, not merely the defendant, as the one engaged in sexually explicit conduct. *United States v. Howard*, 968 F.3d 717, 721-24 (7th Cir. 2020) (vacating conviction where videos showed only the defendant masturbating near a fully clothed, sleeping child; holding that section 2251(a) requires "some action by the offender to cause the minor's direct engagement in sexually explicit conduct"); *United States v. Sprenger*, 14 F.4th 785, 791 (7th Cir. 2021) (vacating conviction where photos depicted defendant's naked, erect penis near a sleeping minor's face because images showed "the defendant, not the minor, engaged in sexually explicit conduct"). We need not resolve that federal circuit split here; we note only that the federal courts' lack of agreement confirms the meaning of section 2251(a) is not so plainly contrary to Rubio's position, as to render his reading of the Illinois provision frivolous or patently without merit.

¶ 41    Nevertheless, the question posed to us is whether the defendant has stated the gist of a claim. The answer to that question is yes.

¶ 42                              III. CONCLUSION

¶ 43    For the foregoing reasons, we reverse the circuit court's summary dismissal of Rubio's first-stage postconviction petition and remand for second-stage postconviction proceedings.

¶ 44    Reversed and remanded.

¶ 45    PRESIDING JUSTICE MITCHELL, dissenting:

¶ 46    Does the statutory phrase "engaged in" require the minor-victim in a child pornography prosecution to be an active participant in the sexual conduct portrayed in the prohibited images? Defendant argues that the answer to this question is "Yes" and suggests that a child who is

17

unconscious, asleep, or otherwise passive cannot be "engaged in" sexual conduct within the meaning of the child pornography section of the Criminal Code of 2012. 720 ILCS 5/11-20.1 (West 2018). The majority concludes that the issue framed and briefed by defendant is arguable but declines to decide the merits of defendant's statutory argument and instead remands for further proceedings. Respectfully, I cannot agree. Because this appeal comes to us from a first-stage dismissal, our review is *de novo*. See *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). The dispositive issue is one of statutory interpretation, and the material facts are undisputed. There is therefore no prudential reason to postpone deciding the question.

¶ 47    Defendant's statutory argument rests upon a premise that the word "engaged" necessarily imports volition, conscious action, or affirmative participation by the child. When interpreting a statute, we begin—and ordinarily end—with the language the legislature enacted. Undefined words are given their ordinary meaning, but they are not read in isolation. Rather, they are construed in their statutory context and in light of the purpose of the legislation as a whole. "[O]ur primary goal in interpreting a statute is to ascertain and give effect to the legislature's intent," and we presume "that the legislature did not intend absurd, inconvenient, or unjust results." *People v. Hilton*, 2023 IL App (1st) 220843, ¶ 16. Here, the child pornography section criminalizes visual depictions of children "engaged in" specifically enumerated forms of sexual activity. 720 ILCS 5/11-20.1(a)(1)(i)-(vii), (a)(6). A person "commits child pornography" by filming or depicting a minor child "actually or by simulation engaged in any act of sexual penetration or sexual conduct with any person ***." *Id.* § 11-20.1(a)(1)(i). The statute says nothing about the child's willingness, awareness, or degree of participation.

¶ 48    Indeed, the statute's definition of "sexual conduct" demonstrates precisely the opposite. Sexual conduct is defined in relevant part as "any knowing touching or fondling by *** the

accused, *** of the victim *** or any part of the body of a child under 13 years of age ***." *Id.* § 11-0.1. A child "engaged in" "sexual conduct" plainly encompasses the child being touched by the accused. *Id.* § 11-0.1, 11-20.1(a)(1)(i). To be touched does not require the child's active participation. Further, several of the enumerated acts in the statute contemplate that the child may be the passive recipient of sexual abuse. *Id.* § 11-20.1(a)(1)(iv) (prohibiting depiction of a child "actually or by simulation portrayed as being the object of, or otherwise engaged in, any act of lewd fondling, touching, or caressing involving another person"), (vi) (same as to a child "portrayed or depicted as bound"), (vii) (same as to a child "depicted or portrayed in any pose, posture, or setting involving a lewd exhibition" of a child or other person's genitals, pubic area, buttocks, or breasts). A child who is sexually penetrated while unconscious is no less the subject of the depicted sexual conduct because the child neither initiated nor was aware of the assault. Likewise, a child who is being fondled while asleep remains depicted in the very conduct the statute seeks to prohibit.

¶ 49    Nor does giving "engaged in" its ordinary meaning render the phrase superfluous. The phrase requires that the child be depicted as involved in the enumerated sexual conduct. The phrase distinguishes images depicting actual sexual conduct from images that merely portray nudity or other circumstances lacking the conduct specified by statute.

¶ 50    Moreover, the word "engage" is used in another pornography offense. 720 ILCS 5/11-25 (West 2026); *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 459 (2002) ("Statutes relating to the same subject must be compared and construed with reference to each other so that effect may be given to all of the provisions of each if possible."); *In re Detention of Lieberman*, 201 Ill. 2d 300, 320-21 (2002) ("A subsequent amendment to a statute may be an appropriate source for discerning legislative intent."). There, "a person commits grooming" when he or she knowingly

19

"seduces, solicits, lures, or entices *** a child *to engage or participate in* unlawful sexual conduct." (Emphasis added.) 720 ILCS 5/11-25(a)(2). The word "engage" is used as an *alternative* to the child's active participation in sexual conduct. Thus, a child need not actively participate in sexual conduct to "engage in" sexual conduct.

¶ 51   Defendant's construction produces consequences that are difficult to reconcile with the statute's purpose. Under his interpretation, the criminality of an image could turn not on the nature of the sexual abuse depicted, but on whether the victim happened to be awake. An image of an adult sexually assaulting a conscious child would fall within the statute, while an otherwise identical image of the same assault committed upon a sleeping child would not. Nothing in the statute suggests that the General Assembly intended such an anomalous distinction. *Cf. United States v. Finley*, 726 F.3d 483, 495 (3d Cir. 2013) ("It would be absurd to suppose that [the legislature] intended the statute to protect children actively involved in sexually explicit conduct, but not protect children who are passively involved in sexually explicit conduct while sleeping, when they are considerably more vulnerable."); *United States v. Levy*, 594 F. Supp. 2d 427, 443 (S.D.N.Y. 2009) ("As a matter both of common sense and public policy, the statute must be construed to protect all children, including those who are unaware of what they are doing or what they are being subjected to, whether because they are sleeping or under the influence of drugs or alcohol or simply because of their age.").

¶ 52   Interpretation issues aside, defendant cannot establish that appellate counsel rendered constitutionally ineffective assistance by failing to argue that the evidence was insufficient under the statute. At the time of defendant's direct appeal, no Illinois court had construed the phrase "engaged in" to require that the minor be an active participant in the depicted sexual conduct, nor had any court suggested that a passive, sleeping, unconscious, or otherwise nonvolitional victim

fell outside the protection of the child pornography section. 720 ILCS 5/11-20.1. Counsel's performance is measured against the law as it existed at the time of the appeal, not against a statutory interpretation first announced years later. *Strickland v. Washington*, 466 U.S. 668, 689 (1984) ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."); *People v. English*, 2013 IL 112890, ¶ 34 ("Appellate counsel's assessments of the merits of an issue, furthermore, depends on the state of the law at the time of the direct appeal.").

¶ 53    The sixth amendment does not require appellate counsel to anticipate changes in the law or to advance novel, unprecedented, or strained statutory interpretations that have found no support in existing precedent. See *People v. Wallace*, 2023 IL App (1st) 200917, ¶ 43 (concluding counsel was not ineffective for failing to predict a future change in a statute's interpretation); *People v. Maniwa*, 2024 IL App (4th) 221079-U, ¶¶ 24-27 (holding appellate counsel was not ineffective for not raising an interpretation of the child pornography statute that was not supported by precedent or otherwise meritorious). Competent appellate advocacy consists of selecting the strongest available issues, not asserting every conceivable argument in the hope that a reviewing court might adopt an interpretation no court has previously embraced. See, *e.g.*, *Jones v. Barnes*, 463 U.S. 745, 751-53 (1983). Because defendant's sufficiency argument depends entirely upon a statutory construction that had never before been recognized, counsel's failure to raise it cannot constitute objectively unreasonable performance under *Strickland*.

¶ 54    For these reasons, I would affirm the dismissal of defendant's postconviction petition.